40

THE STATE, EX REL. MANLEY, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(No. 80-1165—Decided April 8, 1981.)

*Madorsky, Katz & Carr Co., L.P.A.,* and *Mr. Garry A. Katz,* for appellant.

*Mr. William J. Brown,* attorney general, and *Ms. Carol A. Weiss,* for appellee.

*Per Curiam.* The issue presented herein is whether the opinion rendered by Dr. Davies, a non-examining physician, was properly utilized by the Industrial Commission in its denial of appellant's motion for a permanent and total disability award.

In *State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio

St. 2d 55, this court discussed the purpose of the opinion of a non-examining physician in a case before the Industrial Commission. This court stated, at page 59: "[T]he non-examining physician is required to expressly accept all the findings of the examining physicians, but not the opinion drawn therefrom. If a non-examining physician fails to accept the findings of the doctors***, the medical opinion that is rendered does not constitute evidence to support a subsequent order of the commission."

It follows that if the non-examining physician does accept the findings of the examining doctors, the resulting report of the non-examining physician will constitute evidence before the commission. *State, ex rel. Rachow, v. Indus. Comm.* (1979), 58 Ohio St. 2d 17; *State, ex rel. Kramer, v. Indus. Comm.* (1979), 59 Ohio St. 2d 39. In the instant case, the non-examining physician did accept the findings of the examining physicians and his report made specific reference to those findings. Since the guidelines of *State, ex rel. Wallace, supra,* were followed, the report of Dr. Davies was evidence before the commission.

Dr. Davies, as well as the commission, determined that appellant was not permanently and totally disabled. It is well established that mandamus will not lie where there is some evidence to support the findings of the Industrial Commission. See, *e.g., State, ex rel. Mees, v. Indus. Comm.* (1972), 29 Ohio St. 2d 128. There was ample evidence, based on the findings of the examining physicians as well as Dr. Davies' report, that appellant was not permanently and totally disabled. Accordingly, a writ of mandamus will not be granted.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, LOCHER and HOLMES, JJ., concur.

SWEENEY and C. BROWN, JJ., dissent.

CLIFFORD F. BROWN, J., dissenting. On the basis of the standard set forth in *State, ex rel. Wallace, v. Indus. Comm.* (1979), 57 Ohio St. 2d 55, 59, that "the non-examining physi-

cian is required to expressly accept all the findings of the examining physicians" the non-examining physician, Dr. Davies, was required to accept the reports of the examining physicians, Dr. Rudolph Reich, M.D., and Dr. Edward Gabelman, an orthopedic physician.

Dr. Reich in his report dated February 1, 1977, and Dr. Gabelman in his report dated January 31, 1977, determined that relator was permanently and totally disabled.[1] Dr. Nickel who reviewed these medical records corroborated such determinations.

There is nothing in the record to indicate that relator was trained or equipped to do anything but manual labor. He was a tree trimmer when he was injured in 1968. He was carrying a bale of hay when the roof gave way causing him to fall and sustain injury in 1971. At the time of his physical examination in 1975 he walked with a cane and an impaired gait. He is totally unfit to pursue his former occupations or any equivalent thereof, all of which require manual labor.

The rule that mandamus will not lie where there is some evidence to support the findings of the Industrial Commission, *State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128,[2] when applied to the facts *sub judice,* permits a "some evidence" shibboleth to destroy the obvious realities pertaining to the relator and his permanent total disability claim. This "some evidence" standard applied to Industrial Commission determinations on the extent of disabilities sinks such determinations into the morass of a Serbonian bog and destroys any meaningful judicial review. It is the equivalent of no judicial review. It is high time for this court to fashion a new and realistic standard of judicial review.

This "some evidence" test and its twin brother, the "abuse

---

[1] Dr. Reich's report dated February 1, 1977, concludes as follows:

"As for disability this claimant is definitely permanently and totally disabled from performing any type of gainful occupation which would entail any type of manual labor."

Dr. Gabelman's report dated January 31, 1977, reads as follows:

"The percentage of permanent disability which I felt Mr. Manley was entitled to was based on the body as a whole. I feel that in view of the rather extensive nature of his injuries he is permanently and totally disabled."

[2] See, also, *State, ex rel. Ruggles,* v. *Stebbins* (1975), 41 Ohio St. 2d 228; cf. *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9.

of discretion" concept, used in mandamus actions to grant or deny relief in extent of disability determinations by the Industrial Commission serves only to rubber stamp with approval the bureaucratic maze of the commission. It thwarts justice. It fails to attain it.

A review of the medical records by Dr. Stewart Nickel, M.D., also supports the findings of Dr. Reich and Dr. Gabelman that relator was permanently and totally disabled. Dr. Nickel's report dated June 1, 1979, confirms the diagnosis of myositis of the lumbosacral or low back area and right shoulder injury, all disabilities work related to the injuries when relator fell from a tree in 1968.

The reduced percentages of disabilities asserted by the nonexamining physician, Dr. Davies, support a finding of permanent total disability. Dr. Davies allowed 27 percent permanent partial disability to the shoulder, 39 percent permanent partial disability to the back and 10 percent permanent partial disability to the knee, for a total of 76 percent disability. However, since relator had previously been awarded by the Industrial Commission 30 percent permanent partial disability for his knee and sprained left wrist, a percentage which could not be decreased by a nonexamining physician, the total then is 96 percent permanent partial disability. Such a disability is the equivalent of permanent total disability.

For these reasons, I would reverse the Court of Appeals and the determinations of the Industrial Commission that relator is not permanently and totally disabled.

SWEENEY, J., concurs in the foregoing dissenting opinion.