THE STATE, EX REL. OHIO PRECISION CASTINGS, INC., APPELLANT, *v.* BOHMAN ET AL., APPELLEES.

[Cite as State, ex rel. Ohio Precision Castings, v. Bohman (1982), 69 Ohio St. 2d 391.]

(No. 81-829—Decided February 24, 1982.)

Smith & Schnacke Co., L.P.A., Mr. Gary W. Auman and Ms. Janis Rosenthal, for appellant.

Mr. W. Michael Shay, for appellee Bohman.

Mr. William J. Brown, attorney general, and Mr. James E. Uprichard, Jr., for appellees Industrial Commission et al.

*Per Curiam.* The decedent was employed in the heat treatment department of appellant's facility. There, hot castings are removed from an oven and submerged in a tank containing water heated in excess of 150 degrees Fahrenheit. The tank is recessed into the floor except for 12 inches which extend above floor level. Located at the rear of the tank is a gas oven. Standard guardrailing was positioned in front of the tank; however, guardrailing had not been erected along either side of the tank. Two steel doors are hinged on opposite sides of the tank, each of which serves to cover one-half of the tank when closed. At the time of the injury, one steel door was raised extending to a vertical height of 42 inches.

The commission, in granting the specific safety requirement violation award, found that the decedent's death occurred as a result of appellant's failure to comply with IC-5-02.03(E), which provides, in pertinent part:

"OPEN VATS, OPEN SOAKING PITS AND OPEN TANKS

"Sides of such vats, soaking pits, and tanks, containing injurious chemicals or materials over 150° F. in temperature, shall extend to a height of not less than thirty-six (36) inches above the working floor level or shall be guarded by standard guard railing. Employees shall not be required to work over such vats, soaking pits and tanks except on elevated runways, platforms, and walkways * * * ."

Appellant argues that since IC-5-02.03 is titled "PERMANENT OPENINGS—FLOOR, WALL AND YARD," its application extends only to those vats and tanks which are con-

tinuously open and not to the tank in question which was open for only 30 minutes daily. We disagree.

The regulation refers to permanent openings in contrast to those openings which are temporary in nature. The interval of time in which the tank is used is irrelevant when determining its permanency. Moreover, the fact that two steel doors protected this tank, when it was not in use, will not serve to transform a permanent opening into a temporary one. We, therefore, find that the commission did not abuse its discretion in determining that the subject tank constituted a permanent opening pursuant to IC-5-02.03.

Appellant contends that even if the tank constitutes a permanent opening within the context of IC-5-02.03(E), the record is without evidence indicating that employees were required "to work over" the tank. We agree. The commission, however, did not base its finding upon this portion of IC-5-02.03(E). Instead, the specific safety requirement determined to have been violated was premised upon the failure to properly guard the tank, and not upon the separate and distinct requirement relating to the proximity of employee contact.

Appellant also argues that the tank was properly guarded in accordance with IC-5-02.03(A) and (E). IC-5-02.03(A) provides, in relevant part:

"FLOOR OPENING means an opening in any floor, platform, pavement, or yard twelve (12) inches or more in its least dimensions.
" * * *

"(3) Safety Covers

"When a safety cover is used to protect an opening, the unused sides of the opening shall be guarded when the cover is raised."

The Court of Appeals stated, and we agree, " * * * the safety cover provision in IC-5-02.03(A)(3) clearly applies to * * * the guarding of floor openings, and does not apply to IC-5-02.03(E), governing open tanks containing injurious chemicals or materials over 150 degrees Fahrenheit in temperature." Furthermore, the record is clear that when the tank was in use, the sides thereof were not guarded in accordance with IC-5-02.03(E).

Alternatively, appellant maintains that the record is devoid of any evidence from which the commission could reasonably conclude that the decedent's death occurred as a result of its failure to adequately guard the tank. Specifically, it is the appellant's contention that the decedent, by climbing onto the tank, precipated the accident and, further, that adequate guardrailing would not have prevented the accident. The record, however, does not support this contention.

Following the accident, numerous affidavits were taken by commission investigators and by appellant. What is established is that there were no eyewitnesses to the accident or to the decedent's precise location immediately prior to the accident. Thus, a disputed factual situation arose as to whether the injury resulted from appellant's failure to comply with a specific safety requirement.

It is well-established that the determination and resolution of such a factual issue is within the sound discretion of the commission, *State, ex rel. Allied Wheel Products, Inc.*, v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50, provided the record contains some evidence to support the commission's findings. *State, ex rel. Humble*, v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77, 79.

In the instant cause, the record contains two comprehensive investigative reports, together with photographs, from which the commission could reasonably conclude that the decedent's death occurred as a result of appellant's failure to guard the tank in compliance with IC-5-02.03(E). Accordingly, since the record contains some evidence to support the commission's factual findings, those findings will not be disturbed. *State, ex rel. Davis*, v. *Indus. Comm.* (1979), 60 Ohio St. 2d 160, 161; *State, ex rel. Dodson*, v. *Indus. Comm.* (1980), 62 Ohio St. 2d 408, 410; *State, ex rel. G F Business Equip.*, v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446, 447.

For the foregoing reasons, the judgment of the Court of Appeals denying the writ is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

CLIFFORD F. BROWN, J., concurring. I concur in the judgment affirming the Court of Appeals which denied the writ because the evidence in the files of the Industrial Commission is overwhelming to support its finding that the employer, Ohio Precision Castings, violated the specific safety requirement at issue, and there is no need to resort to the nebulous, rubber stamp "some evidence" test first created in *State, ex rel. Humble,* v. *Mark Concepts* (1979), 60 Ohio St. 2d 77, 79, *supra*—of which I heartily disapprove—to support the Industrial Commission decision. See my dissent in *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 170.