THE STATE, EX REL. BERRY, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as State, ex rel. Berry, *v.* Indus. Comm. (1983), 4 Ohio St. 3d 193.]

(No. 82-477—Decided May 4, 1983.)

*Messrs. Mancino, Mancino & Mancino* and *Mr. Paul Mancino, Jr.,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. James E. Uprichard, Jr.,* for appellee.

*Per Curiam.* In his application alleging noncompliance with a specific safety requirement, appellant claims that the employer failed to comply with the provisions contained in IC-5-09 and IC-5-10. In pertinent part IC-5-09.03 provides:

"(B) INTERNAL AND SPECIAL GRINDING EQUIPMENT

"Cup cylinder, tool, precision, flexible shaft type, *portable* and internal *grinding equipment which utilize grinding wheels three (3) inches or more in*

*diameter and are operated at a peripheral speed of three thousand (3000) feet per minute (fpm) or more, shall be provided with a guard* unless they are equipped with protection flanges, bands or chucks. Where the nature of the work is such that the material acts as a shield, such as grinding wheels used exclusively for internal grinding, the material shall be construed as constituting a guard, and no additional guard shall be required." (Emphasis added.)

IC-5-10.04 provides in pertinent part as follows:

"(A)  RESPONSIBILITY

*"The employer shall provide eye protection for all employees engaged in the operations listed in IC-5-10.04(B) and exposed to an eye hazard. Eye protection shall also be provided for any other employees required to work in the immediate area and who are exposed to the hazards of the operations listed.* It shall be the responsibility of the employee to use the eye protection provided by the employer. See Section 4101.12 R.C. and Section 4101.13 R.C.

"(B)  OPERATIONS REQUIRING EYE PROTECTION

"* * *

"(9)  *Metal* chipping, cutting, cleaning, *grinding, conditioning or machining where there is a danger of flying particles.*" (Emphasis added.)

This court has often stated that "* * * the determination of disputed factual situations as well as the interpretation of a specific safety requirement is within the final jurisdiction of the Industrial Commission." *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190]; *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77, 79 [14 O.O.3d 275]. Nevertheless, where the uncontested evidence shows a violation of a specific safety requirement, the commission will be held to have abused its discretion in denying an additional award and mandamus will be granted. *State, ex rel. Truckey,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 132 [58 O.O.2d 321]; *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235, 241 [21 O.O.3d 147].

A careful review of the record reveals all of the evidence clearly demonstrates that the grinding wheel which disintegrated measured one and one-fourth inches in diameter. The application of IC-5-09.03(B) extends only to "* * * portable * * * grinding equipment which utilize grinding wheels three (3) inches or more in diameter * * *." Accordingly, the commission committed no abuse of discretion when it determined that a violation of IC-5-09 did not occur.

Appellant further contends the commission erroneously adopted the findings of its staff hearing officer who denied the claim pertaining to the employer's failure to provide eye protection. IC-5-10.04(A) requires employers to furnish eye protection for "* * * all employees engaged in the operations listed in IC-5-10.04(B) * * * [and] * * * for any other employees required to work in the immediate area and who are exposed to the hazards of the operations listed." IC-5-10.04(B)(9) specifically includes metal grinding, conditioning or machining where a danger exists of flying particles.

The confusion centers upon the notes of the staff hearing officer, Ms. Linda Kenney, made at the August 14, 1979 hearing. Therein, while recognizing that the grinding wheel measured one and one-fourth inches in diameter, thus rendering the provisions within IC-5-09 inapplicable, the hearing officer further stated:

"Also, [the] requirement for safety glasses in IC-5-10 is for the operator only. The claimant was *not* the operator — merely a bystander — Deny." (Emphasis *sic.*)

We are unable to agree with this conclusion. IC-5-10.04(A) unequivocally mandates that "[e]ye protection shall also be provided for any other employees required to work in the immediate area and who are exposed to the hazards of the operations listed." Accordingly, it cannot be said that the provisions of IC-5-10 apply exclusively to operators, and for the commission to so hold constitutes an abuse of discretion. Cf. *State, ex rel. Truckey, supra.* Additionally, the record contains uncontroverted evidence which reveals that appellant was regularly required to work in the machinist's room for purposes of repairing equipment.

The court of appeals denied the writ, concluding that "* * * the hearing officer's notes specifically refer to providing of glasses which relator did not wear * * *," and that this finding is supported by some evidence within the record. However, the notes referred to by the court of appeals are those of Mr. Robert L. Robbins, made on May 16, 1978, at a hearing which appellant's counsel did not attend due to a prior commitment to appear before another tribunal. On May 24, 1978, Robbins notified appellant's counsel that "[u]nder the circumstances we feel that you are entitled to be heard on this matter and the claim will be rescheduled for hearing at a later date." The hearing was subsequently rescheduled and conducted on August 14, 1979, before Ms. Linda Kenney, whose notes, as previously mentioned, state that the provisions of IC-5-10 apply only to the operators of equipment.

Thus, while the observation by the court of appeals with regard to Robbins' notes is correct, nonetheless, the commission elected to premise its decision upon the applicability of IC-5-10, and not upon the existence of protective eyewear.

This court has previously reviewed the notes of a staff hearing officer and the commission's concomitant reliance thereon. See *State, ex rel. Cox, supra.* In the case at bar, the commission's order was unquestionably predicated upon the hearing officer's erroneous conclusion that IC-5-10 is inapplicable since appellant was not operating the hand-held grinder. Moreover, a determination has yet to be made concerning the availability of protective eyewear.

Therefore, as in *State, ex rel. Cox,* we conclude that the commission abused its discretion and, further, that a writ of mandamus be issued directing the commission to grant appellant a hearing for purposes of allowing all parties to present evidence necessary for the commission to determine

whether the specific safety requirement obligating the employer to furnish eye protection was violated.

For the foregoing reasons, the judgment of the court of appeals is vacated and a writ is hereby issued in accordance with this opinion.

*Judgment accordingly.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

C. BROWN, J., concurs separately.

HOLMES, J., dissents.

J. P. CELEBREZZE, J., not participating.

CLIFFORD F. BROWN, J., concurring. The key phrase in the majority opinion, in which I wholeheartedly concur, states that "the commission elected to premise its decision upon the applicability of IC-5-10, and not upon the existence of protective eyewear." The commission could have stated merely that its decision was based on "the evidence in the file and/or the evidence adduced at hearing." Such a statement would presumably include the issue of protective eyewear availability, and some evidence of the existence of the eyewear does exist in the record. It is quite likely, therefore, that this court, confronted with the standard boiler-plate "explanation," would have concluded that some evidence in support of the decision existed.

However, the commission framed its decision in a manner which revealed its faulty legal basis. In choosing to go beyond the usual slogans which typically hide the reasoning behind its decisions, the commission cannot avail itself of the "some evidence" shibboleth in this case.

The use of such boiler-plate language by the commission is habitual. In *State, ex rel. Norman,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 263, 263-264, "* * * the commission denied relator's application, predicating its decision 'on the report of Dr. Reynolds, evidence in the file and evidence adduced at the hearing.' " In *State, ex rel. Jennings,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 101, " At the request of the commission, relator was examined by Dr. William J. McCloud, who submitted a report concluding that relator was not permanently and totally disabled. Thereafter, relator was granted leave to depose Dr. McCloud * * *.

"Based on the foregoing, the reports of Drs. Gosman and Williams, the hearing examiner recommended the relator be found permanently and totally disabled. On October 22, 1981, the commission denied relator's application based on *'the evidence in the file and/or the evidence adduced at the hearing.'* " (Emphasis added.)

In *State, ex rel. Hughes,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 57, 58, the

facts were as follows: "On October 2, 1980, the commission denied appellant's motion for permanent and total disability, basing its decision on the reports of Drs. Bolz, Praul, McCloud, *'the evidence on file and the evidence adduced at the hearing.'* " (Emphasis added.) In *State, ex rel. Allerton,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 396, 397 [23 O.O.3d 358], "The commission's order was based on 'the medical reports of Drs. Turton and McCloud, *evidence in the file and evidence adduced at the hearing.'* " (Emphasis added.) In *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 166 [22 O.O.3d 400], "The commission based its findings on the medical reports of Drs. Kessler, Giray, McCloud and Horwitz, *'and the evidence in the file and/or the evidence adduced at the hearing.'* " (Emphasis added.) The commission demonstrates a remarkable ability to invent variations on a basic theme.

In *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235 [21 O.O.3d 147], a case also involving a claim of injury from a violation of a specific safety requirement, the hearing officer's decision was reviewed by the commission and approved without any written explanation. Claimant's application was summarily denied. The court of appeals, on review, pointed out the vagueness surrounding the grounds for such a decision, as quoted *supra,* at page 242: " 'Upon review of the record, this court cannot properly ascertain the basis of the holding by the staff hearing officer nor can we understand the facts concerning relator's injury.' " As Justice Holmes aptly noted, "If the Court of Appeals could not from the record properly ascertain the basis of the holding of the staff hearing officer, the question is reasonably posed as to how the Industrial Commission could have so ascertained the basis of the order." *Id.*

These examples of Industrial Commission decisions studded with cliches or worse were gleaned from only those cases decided by this court since 1981. Over this same span, I have rallied against the meaningless rubber-stamp standard of review used by this court, the so-called "some evidence rule." See, *e.g. State, ex rel. Kilburn,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 103, 106; *State, ex rel. Questor Corp.,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 240, 242 [24 O.O.3d 334]; *State, ex rel. Allerton,* v. *Indus. Comm., supra,* at pages 399-400; *State, ex rel. Ohio Precision Castings,* v. *Bohman* (1982), 69 Ohio St. 2d 391, 395 [23 O.O.3d 256]; *State, ex rel. Teece,* v. *Indus. Comm., supra,* at pages 170-174; *State, ex rel. Peeples,* v. *Farley Paving* (1981), 66 Ohio St. 2d 106, 109 [20 O.O.3d 96]; *State, ex rel. Manley,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 40, 43 [20 O.O.3d 25].

I am now convinced that regardless of the standard of review applied by this court, justice cannot be achieved for claimants before the Industrial Commission without enforcing some specificity in the opinions of that body. Sloganeering such as "based on the evidence in the file and/or adduced at hearing" effectively frustrates the review process, whatever level of scrutiny is applied.

The courts considering workers' compensation claims require some explanation for the actions of the commission beyond the meaningless boiler-

plate platitudes currently in use, given the significant development of the law in this area. For example, when allegations of violations of specific safety requirements are at issue, the commission must consider not only whether the events alleged did occur, but whether the employer, the employee and the condition are covered by the regulation. See, *e.g.,* the instant action, and *State, ex rel. Kilburn,* v. *Indus. Comm., supra.* Specification of the grounds for decision allows reviewing courts to evaluate the decision's correctness.

When medical reports are involved, extensive rules exist concerning the reliability of such reports. See, *e.g., State, ex rel. Norman,* v. *Indus. Comm., supra; State, ex rel. Hughes,* v. *Indus. Comm., supra; State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199]; *State, ex rel. Wallace,* v. *Indus. Comm.* (1979), 57 Ohio St. 2d 55, 59 [11 O.O.3d 216]. Without some explanation, the commission's use of unreliable reports is effectively unreviewable.

Moreover, R.C. 4123.519 distinguishes decisions as to extent of disability, which are subject to an action in mandamus, from other, appealable decisions of the commission. *State, ex rel. Bosch,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 94; *State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (1975), 42 Ohio St. 2d 278 [71 O.O.2d 255]. Some specification of the reasoning of the commission would aid in the classification of the decision for purposes of appealability.

Given the ever increasing body of workers' compensation law, I strongly urge the establishment of some standards to guide the commission when drafting its opinions, so that reviewing courts may be assured that the specific grounds relied upon are discernible. I would require the commission in all cases to specify the reports or findings in the file it relied upon and why such reliance was appropriate. Otherwise, we will be left, as we are now, to grope in the dark, relying on the barest assurance that the decisions of the commission are in accordance with law.

HOLMES, J. I must dissent in that the majority opinion has unfortunately misinterpreted the facts as borne out by the record upon which the hearing officer originally made the determination as approved by the commission and affirmed by the court of appeals.

The Court of Appeals for Franklin County, in its decision denying relator's requested writ of mandamus below, quite correctly pointed out that it was stated in *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190], that:

"* * * This court has held on many occasions that the determination of disputed factual situations as well as the interpretation of a specific safety requirement is within the final jurisdiction of the Industrial Commission. * * *"

Clearly, the administrative body which promulgates the specific safety requirements, and which body is knowledgeable of such requirements, should be the final authority on the application of those requirements unless their interpretation defies the constitutional requirement of specificity, denies equal

protection of the laws, or unless there is no factual support for such an interpretation.

The specific safety requirement involved here, IC-5-10.04(A), requires the employer to furnish eye protection for "all employees engaged in the operations listed in IC-5-10.04(B) * * * [and] for any other employees required to work in the immediate area and who are exposed to the hazards of the operations listed." It appears there is no question that the claimant was not an employee engaged in the operations listed in IC-5-10.04(B); however, the majority resorts to applying the duty by virtue of the latter part of such regulation which would require the protection for "any other employees required to work in the immediate area and who are exposed to the hazards of the operations listed."

The regulation, as promulgated, would require that the employer provide eye protection not only for those who are the operators of the mechanical devices which might occasion the injury, but also for *those employees who are required to work in the immediate area* and within such required work status are exposed to the hazards of those operations.

Even though the hearing officer interpreted the regulation too narrowly by stating that the "requirement for safety glasses in IC-5-10 is for the operator only * * *," she also stated correctly, according to the evidence, that "[t]he claimant was *not* the operator — merely a bystander."

Here, it was stipulated by counsel that the file record of the Industrial Commission concerning this claim would constitute the evidence and record in this appeal.

Although, admittedly, the writer of this dissent is not an ardent fan of the "some evidence" rule as adopted by this court in workers' compensation cases a number of years ago, here we find within the record more than "some evidence" to support the order of the Industrial Commission upon the issue of the claimed violation of the specific safety requirement.

The evidence, by way of the affidavit of Daniel Ebenchweller, claimant's immediate supervisor in the press department of the employer company, specifically showed that the claimant's duties "were that of a Press Line Maintainer, that is the fixing of the machines when they were broke down and the making of adjustments on the presses." (Report of special investigator, Rudy S. Abrams.) Further, Ebenchweller stated in the affidavit that "when the occasion would arrive, the claimant would have to schedule himself to go to the Machinist Room [sic] to replace or repair parts that needed attention." A later statement by a representative of the employer would seem to show that this meant that the claimant's required procedure was to take such parts to the machinist for repairs.

Additionally, Ebenchweller, in the original report of the injury, answered in response to the question as to what the appellant was doing when injured that the appellant was "spectating."

The majority opinion states that "* * * the record contains uncontroverted evidence which reveals that appellant was regularly required to

work in the machinist's room for purposes of repairing equipment." This is not borne out by the record, not only as evidenced by the quoted statements of the affiant, but also based upon evidence to be found in a letter of Michael S. Klimko, manager of Industrial Relations for the employer company, to the Industrial Commission. Such letter stated as follows:

"On the day of his accident, the applicant left his home department without authorization from his Foreman, and went into the machine shop allegedly to show a trainee how to have some blades polished.

"The normal procedure is to leave the blades there and pick them up after a machinist has polished them. He stayed in the area while the machinist prepared to do the job.

"Safety glasses are provided by the Company and are required to be worn in the area.

"The machinist and also the trainee were wearing safety glasses at the time of the accident while the applicant did not put on safety glasses."

Upon such evidence in the record, the hearing officer could reasonably conclude that the appellant was merely a bystander and not an employee who was required to work in the immediate area of the machinist's room, as was James Williams, the machinist, to whom the appellant had taken the tool to be polished or ground.

In order for the appellant to prevail in this action seeking a writ of mandamus, it is incumbent upon him to show that there was no reasonable evidence which would support the commission's findings and that appellant has a clear legal right to the remedy. It is my view that the appellant failed to sustain his burden in these regards. The evidence would reasonably show that the appellant went to the machine shop, where he was not regularly required to work, in order for the regular machinist to work upon a piece of equipment from one of the machines under the appellant's control, and when the machinist activated a portable grinder it blew up, causing the appellant's injuries.

I conclude that the portion of IC-5-10.04 in effect at that time does not cover the appellant since he neither worked in the machine shop, nor was he required to work in the immediate area as covered by the regulation.

Accordingly, I would hold that the Industrial Commission did not abuse its discretion in refusing to grant the appellant an additional award for the alleged violation of a specific safety requirement, and would affirm the court of appeals.