[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 105.]

THE STATE EX REL. BISHOP, APPELLEE, *v*. WATERBEDS 'N' STUFF, INC.,
APPELLANT; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Bishop v. Waterbeds 'N' Stuff, Inc.*, 2002-Ohio-62.]

*Workers' compensation—Alleged violation of a specific safety requirement—*
*Court of appeals' judgment that violation of Ohio Adm.Code 4121:1-5-*
*02(D)(1) occurred reversed, when.*

(No. 00-2235—Submitted October 2, 2001—Decided January 16, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-98.

_____

*Per Curiam*.

{¶ 1} Appellee-claimant Steven A. Bishop worked in the warehouse of appellant Waterbeds 'N' Stuff, Inc. ("WBS"). One of his regular tasks was to help unload incoming trucks. Some days, these trucks contained boxes of C-bunks, a metal futon/upper bunk combination. Each box was approximately six and a half feet long, four feet wide, and seven inches deep. Each box weighed one hundred thirty-two pounds.

{¶ 2} Ideally, a picker forklift was used to transport the boxes from the truck to the shelving where they were stored. The forks of the picker were almost eight feet long, enabling it to carry the four-by-eight-foot skid on which the C-bunks were placed.

{¶ 3} After the skid was loaded, the forklift moved the skid and boxes to a storage area. Sometimes the shelving in this area was elevated. When that was the case, there were apparently only two ways for an employee to reach the appropriate shelf—either climb the shelf's cross-bracing or ride up on the skid as it was being elevated. From that point, the employee would essentially muscle the boxes from

the skid to the shelf. Occasionally, that would force the worker to step onto the raised skid.

{¶ 4} On September 29, 1997, the picker forklift was needed elsewhere. Claimant's foreman, Lonnie Lawless, instructed claimant and coworker Irvin P. "Bo" Diles, Jr., to use the Yale forklift instead. The Yale forklift had forty-two-inch-long forks—not even half the size of the C-bunk skid. Concerned about the load's center of gravity, Lawless instructed the men "not [to] stand any further than the forks will support."

{¶ 5} On one of the trips, Diles took his turn operating the forklift. Claimant climbed the cross-bracing to the second shelf, approximately eight feet above the ground. Diles then raised the skid to claimant's level. When claimant attempted to pull the first box onto the shelf, he stepped on the unsupported end of the skid. Claimant's weight caused the skid to break, sending claimant, the skid, and three C-bunk boxes to the floor. Claimant was severely injured as a result.

{¶ 6} After his workers' compensation claim was allowed, claimant moved the Industrial Commission of Ohio for additional compensation, alleging that WBS had violated several specific safety requirements ("VSSR").

{¶ 7} A staff hearing officer denied the application:

"[Ohio Adm.Code] 4121:1-5-02(D)(1)(a) provides:

" '(D) Elevated platforms, runways and walkways.

" '(1) Guarding.

" '(a) Elevated platforms * * * six feet or more above floor or ground level shall be guarded with standard railings and toeboards. * * *'

"4121:1-5-01(B)(96) defines platforms as 'A working space for employees elevated above the surrounding floor or ground.' * * * It is clear that the hazard this section guards against has to do with permanent and semi-permanent structures used by workers, and does not apply to a temporary pallet or skid on a forklift truck.

The Staff Hearing Officer finds that this section does not apply to the facts of this case.

"* * *

"4121:1-5-13(F)(4)(a) states:

" '(4) Lifting of personnel.

" 'Lift trucks equipped with vertical only, or vertical and horizontal travel controls using a lifting carriage or forks for lifting of personnel shall:

" '(a) Have a platform with standard guardrails, intermediate rail, and toeboards, and a mast guard seventy-two inches in height, all securely fastened to the lifting carriage or forks';

"The purpose of the picker skid or pallet at issue here was not the routine lifting of personnel. In fact, the only evidence available (since claimant was not present, and in any event does not remember the day of the injury), is the affidavit of Mr. Diles. Mr. Diles states that before claimant's injury, he had climbed up the side of the shelving unit to meet the raised forklift load. Thus, there is no relationship between this code section and the facts of this claim. This section does not apply. Claimant was not raised up with the load, he met the load at the shelving. The proximate cause of claimant's injury is not related to this code section."

{¶ 8} Rehearing was denied.

{¶ 9} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying a VSSR. The court of appeals found that the commission abused its discretion in distinguishing between temporary and permanent structures for purposes of Ohio Adm.Code 4121:1-5-02(D)(1)(a). It then determined that the skid was indeed a "platform" and ordered the commission to reconsider the claimed violation. It did not mention Ohio Adm.Code 4121:1-5-13(F)(4)(a).

{¶ 10} This cause is now before this court upon an appeal as of right.

**{¶ 11}** The first task in this litigation is to clarify the issues before us. The parties proceed as if both Ohio Adm.Code 4121:1-5-02(D)(1)(a) and 4121:1-5-13(F)(4)(a) are in contention. This is not, however, the case.

**{¶ 12}** The commission found that neither specific safety requirement applied. Claimant challenged both findings in mandamus in the court of appeals. The magistrate focused almost exclusively on Ohio Adm.Code 4121:1-5-02(D)(1)(a). She made a passing reference to Ohio Adm.Code 4121:1-5-13(F)(4)(a), stating, "*If* the employer was actually using the forklift/skid as a personnel-lifting device, then it must comply with the safety rules for a personnel-lifting device." (Emphasis added.)

**{¶ 13}** This statement misses a key fact: the commission had already determined that the forklift/skid was *not* being used as a personnel-lifting device. And neither the magistrate nor the court of appeals found that conclusion to be an abuse of discretion. The court of appeals issued its mandamus as to Ohio Adm.Code 4121:1-5-02(D)(1)(a) only, with no mention in either its opinion or judgment entry of Ohio Adm.Code 4121:1-5-13(F)(4)(a).

**{¶ 14}** Thus, either inadvertently or not, the commission's finding that Ohio Adm.Code 4121:1-5-13(F)(4)(a) is inapplicable has not been disturbed by the court of appeals. Since claimant has not appealed the judgment below, the determination of no violation of Ohio Adm.Code 4121:1-5-13(F)(4)(a) is *res judicata*. Accordingly, the sole issue before us is compliance with Ohio Adm.Code 4121:1-5-02(D)(1)(a).

**{¶ 15}** That section provides:

"(D) Elevated platforms, runways and walkways.

"This rule does not apply to scaffolding.

"(1) Guarding.

"(a) Elevated platforms, runways and walkways six feet or more above floor or ground level shall be guarded with standard railing and toeboards."

**{¶ 16}** Controversy centers on whether the skid constituted a platform. The commission never made that determination. It merely said that the section did not apply to temporary apparatuses, such as the skid-forklift setup.

**{¶ 17}** The court of appeals correctly invalidated that reasoning, stressing that this specific safety requirement made no distinction between temporary and permanent. This is a sound determination. An employer cannot evade this specific safety requirement by claiming that the equipment was only temporarily in use or, as here, temporarily jury-rigged for some purpose.

**{¶ 18}** The court of appeals then went one step further and ruled that the skid was indeed a platform as defined by Ohio Adm.Code 4121:1-5-01(B)(96). WBS objects, and we find that objection to be well taken. The interpretation of a specific safety requirement or, as here, a definition contained therein, rests exclusively with the commission. *State ex rel. Berry v. Indus. Comm.* (1983), 4 Ohio St.3d 193, 4 OBR 513, 448 N.E.2d 134. WBS, however, in anticipating a possible writ to the commission ordering further consideration of this definitional question, does not rest. It challenges the propriety of a writ ordering reconsideration, asserting that even if the skid were a platform, there is no evidence that guardrails or toeboards would have prevented the accident or lessened the injury's severity.

**{¶ 19}** WBS has a persuasive argument. The commission found that the accident occurred because the elevated skid broke under claimant's weight. Claimant's counsel proposes that had there been a guardrail, *perhaps* claimant could have held onto the broken pallet as he fell to the ground. That speculation does not go to the issue of accident prevention and does not explain how that possibility would have protected claimant from the impact of the fall or from the pallets that crashed down on him thereafter.

**{¶ 20}** The only evidence on point is the testimony of supervisor Lawless:

"Q. [WBS Attorney] There's evidence in the record indicating that from the affidavit of Bo Diles that when Steven Bishop stood on the unsupported part of the skid, the skid immediately broke and he fell to the ground. Assuming that is how this accident happened, Lonnie, if this skid had had a toeboard around the perimeter of it, would that have kept this accident from happening at all?

"A. [Lawless] Not at all. Not at all.

"Q. If this skid had had guardrails around it, given the way the skid broke as you understand this accident, would that have kept this accident from happening?

"A. No. It would have drug [*sic*] him right off."

**{¶ 21}** The absence of any evidence of proximate causation negates the need for any further consideration on either the commission's part or ours. The commission's denial of an award for violation of Ohio Adm.Code 4121:1-5-02(D)(1)(a) was correct, albeit for reasons other than those given in its order.

**{¶ 22}** Accordingly, the court of appeals' judgment that a violation of that specific safety requirement occurred and its issuance of a writ are reversed.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

————————————

*Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Thomas E. Boyle* and *Mark C. Melko*, for appellant.

*Stanley R. Jurus Law Office* and *John R. Workman*, for appellee.

————————————