DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, John R. Silz, II (hereinafter "relator"), filed this original action in mandamus requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio (hereinafter "commission"), to vacate its order denying relator's application for a violation of a specific safety requirement (hereinafter "VSSR") against his employer, Traffic Specialists, Inc. (hereinafter "employer"), and to order the commission to find the VSSR award appropriate, or in the alternative, to conduct a rehearing.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached hereto as Appendix A.) The magistrate concluded that the commission did not abuse its discretion when finding that Ohio Adm. Code 4121:1-3-01 did not apply because the employer is not primarily engaged in construction. The magistrate further concluded that even if Ohio Adm. Code 4121:1-3-01 did apply, the commission did not abuse its discretion when finding the relator did not establish that lack of a hard hat was the proximate cause of his injuries, nor that use of a hard hat would have mitigated his injuries. Accordingly, the magistrate recommended denial of relator's request for a writ of mandamus.
 {¶ 3} To successfully establish a VSSR, a claimant must establish that his or her injury resulted from the employer's failure to comply with a specific safety requirement. State exrel. Whitman v. Indus. Comm. (1936), 131 Ohio St. 375, 376. The relator has failed to carry this burden. During the hearing, the staff hearing officer (hereinafter "SHO") relied on testimony from Dr. Koppenhoefer on behalf of employer, who opined a helmet would not have protected relator from the severe head injury he sustained after being struck, in a highway construction zone, by a motorist traveling in excess of 50 m.p.h. (Stip. R. at 33.) Unfortunately, relator did not present any expert medical testimony to demonstrate otherwise.
 {¶ 4} The determination of whether the helmet could have protected relator from his injuries is factual. Questions of fact are exclusively within the commission's province. State ex rel.Haines v. Indus. Comm. (1972), 29 Ohio St.2d 15, 16. Thus, the commission's ruling will be upheld absent an abuse of discretion. Based upon the evidence presented, there was no abuse of discretion on the part of the SHO in finding that a helmet would not have protected relator from his injuries. Accordingly, we adopt the decision of the magistrate.
 {¶ 5} Relator also moved for a rehearing to consider evidence of another medical report that was not introduced into evidence at the SHO's hearing. Because relator did not submit any new or relevant evidence that could not have been obtained with due diligence during the hearing, the request for a rehearing was properly denied under Ohio Adm. Code 4121-3-20(C). See, also,Sheen v. Kubiac (1936), 131 Ohio St. 52, paragraph three of the syllabus (establishing a basis for what constitutes new evidence).
 {¶ 6} Because relator cannot carry his burden of proving causation, it is unnecessary to decide whether Ohio Adm. Code4121:1-3-01 applies to the employer.
 {¶ 7} Following independent review, pursuant to Civ.R. 53, we find the magistrate properly determined the pertinent facts and applied the appropriate law to them. Relator's objections to the magistrate's decision are overruled and we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Bowman and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. John R. Silz II, : Relator, : v. : No. 03AP-749 The Industrial Commission of Ohio, : (REGULAR CALENDAR) James Conrad, Administrator, Bureau : of Workers' Compensation and : Traffic Specialists Inc., : Respondents.
 MAGISTRATE'S DECISION Rendered on January 29, 2004 Livorno and Arnett Co. LPA, John F. Livorno and Jeffery C.Waite, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Taft, Stettinius Hollister, LLP, Samuel M. Duran and C.Bradley Howenstein, for respondent Traffic Specialists, Inc.
 IN MANDAMUS {¶ 8} Relator, John R. Silz II, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for the violation of a specific safety requirement ("VSSR") against respondent Traffic Specialists, Inc. ("employer"), an ordering the commission to find that a VSSR award is appropriate.
Findings of Fact:
 {¶ 9} 1. Relator sustained a work-related injury on October 15, 1998, and his claim has been allowed as follows:
* * * Open wound of scalp; coma; aphasia; subdural hemorr-coma nos left; fx malar/maxillary-close left; neurogenic bladder nos; funct dis intestine nec; opn skl vlt fx-deep coma; op skl base FX-deep coma; monoplegia lower limb affect dominant right; monoplegia upper limb affect dominant right; early complic trauma nec.
 {¶ 10} 2. As the staff hearing officer ("SHO") noted in his order, the particulars of the accident resulting in relator's injuries are not in dispute:
* * * The injured worker was replacing reflectors between the lanes of Interstate 75 in Kentucky when a third party motorist veered out of the left land [sic] and cut behind the safety truck whose function it was to shield the workers replacing reflectors. The motorist struck the injured worker at 55 miles per hour. The accident investigation of Officer Douglas Pape may be found at SVIU Exhibit #3. It is consistent with the sketch of Mike Ackerson at Exhibit 34.
Eric Ammerman at Exhibit #1 notes that the motorist crossed the dotted line to strike the injured worker. Mr. Ammerman stated that the motorist ". . . went in between our trucks in our work zone." This version of events is substantiated by site supervisor Chad Lay.
 {¶ 11} 3. On October 16, 2000, relator filed his application seeking an additional award under Ohio Adm. Code 4121:1-3-03(G) and argued that the employer was required to have issued him protective headgear in the form of a hard hat and that, had a hard hat been issued which relator would have worn at the worksite, the extent of his injuries would have been lessened.
 {¶ 12} 4. The employer submitted a memorandum in opposition to the application for a VSSR award and specifically noted the November 19, 2001 report of Dr. Ron M. Koppenhoefer who issued a report addressing the issue of whether protective headgear would have lessened relator's injuries. In his report, Dr. Koppenhoefer specifically con-cluded as follows:
In taking into effect the above conditions, I do not believe any type of head protection would have prevent[ed] the severe head injury, which occurred. My opinion is based on a reasonable degree of medical certainty.
My opinion is based on the severity of the trauma. The force of a 50 to 55 mph ford 150 pickup truck is sufficient to cause significant head injuries even if protective equipment is used. The force exhibited by the pickup truck would be far greater than the force needed to cause a significant head injury. Any protective work helmet would not have provided sufficient protection to avoid this unfortunate and traumatic event from occurring. Protective headgear, which is currently on the market to prevent the head from flying objects, physical contact from objectives from falling would not be sufficient to prevent a significant head injury from occurring from a pickup truck going 50 to 55 mph. Helmets are not made for this magnitude of force.
 {¶ 13} 5. Prior to the hearing before the SHO, relator did not present any evidence from medical professionals to support his application.
 {¶ 14} 6. At the hearing, counsel for the employer stipulated that the construction code would apply to the road work which was being done by the relator at the time that he was injured. The testimony from Jeff Feller, Vice President of the employer, indicated that the work being done was maintenance type work to repair/replace the reflectors on the highway. Relator's job responsibilities required that he use a screwdriver to pop out the reflector, a putty knife to scrape off the residue from the reflector, and then he glued the reflector back into place. (Stip. 56.) Mr. Feller also testified that his crews had never used hard hats for the type of work that relator was performing because employees in that type of work are not present in areas where a hazard to their head exists from falling or flying objects, or from physical contact from rigid objects. Furthermore, Mr. Feller testified that head protection is required to withstand a force of an eight-pound ball dropped from a height of five feet where the force on the helmet cannot exceed more than 850 pounds. (Stip. 60.)
 {¶ 15} 7. At the conclusion of the hearing, the SHO first determined that, although the employer stipulated that the construction code applied, the construction code provisions actually did not apply. In that regard, the SHO specifically stated as follows:
The Staff Hearing Officer rules that counsel for the employer may not waive the Scope Provisions of the Ohio Administrative Code in a claim where the State Insurance Fund is a real party at interest as it is in the captioned claim.
OAC 4121:1-3-01(A) contains the following paragraph:
This code covers "construction" activities of employees whose employer engages in such work as its principal business. It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure, but does not cover employees of such other employers when the activities are performed in the ordinary course of maintenance work.
Since it is undisputed that the injured worker was simply replacing damaged reflectors, and since it is undisputed that replacing reflectors was the operation in which the employer of record was engaged on Interstate 75, then it was clearly ". . . the ordinary course of maintenance work . . ." as specific-ally excepted from the Scope Provisions of the Construction Code.
 {¶ 16} Furthermore, the SHO also concluded that the evidence established the employer had taken precautions to shield its employees from passing traffic by placing vehicles both behind and in front of the employees where they were working. Specifically, the SHO concluded that the employer's arrangement constituted a "`method' which clearly secured the equivalent protection consistent with the first paragraph of OAC4121:1-3-01(A). Employer's method protected its employees from injury to their entire bodies as well as their heads. The vast majority of the time the interposition of one or more trucks between workers and passing traffic is more effective than a hard hat."
 {¶ 17} Lastly, the SHO relied upon the opinions of Dr. Koppenhoefer and Officer Pape and concluded as follows that a hard hat would not have mitigated the injuries relator sustained as a result of the injury:
Finally, the Staff Hearing Officer is persuaded by the opinion of Ron M. Koppenhoefer, M.D., to the effect that a "Hard Hat" or other head protection would not prevent the head injury which is the basis for the IC-8 under construction.
Officer Pape, who is a completely disinterested witness, estimated that the motor vehicle involved in this accident was moving at a rate of 55 miles per hour at the time it struck the injured worker. The Staff Hearing Officer is persuaded that head protection would not have mitigated the injuries resulting from this accident.
 {¶ 18} 8. Relator filed a motion for rehearing and submitted the February 27, 2002 report of Dr. Hal S. Blatman who opined as follows:
By the history you supplied, Mr. Silz was struck in an area of his head that would have been protected and covered if he had been wearing a hard hat. The injury was severe but not lethal. Helmets are designed to protect the head from impact. Any reasonable helmet would have provided some level of protection from this injury. It is within reasonable medical certainty that Mr. Silz would have sustained a lesser degree of injury if he had been provided the protection of a helmet. It is my opinion within a reasonable degree of medical certainty that a hard hat would have provided a significant level of protection from head injury due to impact.
 {¶ 19} 9. Relator's motion for rehearing was denied by order of the commission mailed May 22, 2002. The commission specifically stated as follows:
It is hereby ordered that the motion for rehearing filed 02/27/2002 be denied. The injured worker has not submitted any new and relevant evidence that could not have been obtained with due diligence nor shown that the order of 11/27/2001 was based on an obvious mistake of fact or on a clear mistake of law. There is no showing that the part of the order finding that an equivalent method of protection was provided was an obvious mistake of fact or a clear mistake of law.
 {¶ 20} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 22} In regard to an application for an additional award for a VSSR, relator must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer failed to comply with the requirement, and that the failure to comply was the cause of the injury in question. State ex rel. Trydle v. Indus. Comm.
(1972), 32 Ohio St.2d 257. The interpretation of a specific safety requirement is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm. (1983),4 Ohio St.3d 193. Because a VSSR award is a penalty; however, it must strictly construed, in all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State ex rel. Burton v.Indus. Comm. (1989), 46 Ohio St.3d 170.
 {¶ 23} The relevant code provisions are found within Ohio Adm. Code 4121:1-3 which provide specific safety requirements relating to construction. The relevant statute provides, in pertinent part, as follows:
(A) Scope.
* * *
(4) Head * * * protection — includes all operations where employees are required to be present in areas where a hazard to their head exists from failing or flying objects, or from physical contact from rigid objects * * *.
* * *
(B) Definitions.
(1) "Head protection devices" means:
* * *
(d) "Protective helmet" means a rigid headgear also known as a safety or hard hat, or as a safety or hard cap that is worn to provide protection for the head, or portions thereof, against impact, flying particles, or electrical shock, or any combination thereof, and which is held in place by a suitable suspension.
* * *
(G) Head and hair protection.
(1) Responsibility.
(a) Employer.
(i) Whenever employees are required to be present in areas where the potential hazard mentioned in paragraph (A)(4) of this rule are present, employers shall provide them with suitable protective headgear * * *.
* * *
(b) Employees.
Employees shall not alter any head * * * protective equipment that lessens its effectiveness, and shall use such equipment in accordance with instructions and training received.
* * *
(c) Physical requirements for helmets.
(i) Impact resistance.
Helmets shall be capable of withstanding the impact of an eight-pound steel ball, approximately three and three-quarters inches in diameter, dropped onto the center of the top of the helmet from a height of five feet without transmitting an average force of more than eight hundred fifty pounds.
 {¶ 24} In the present case, the facts show that relator was performing highway maintenance work and that his tasks involved repairing and/or replacing the reflectors found within the pavement on the highway. The testimony further indicates that the employer's business is to install raised pavement markers along the highways and provide for their maintenance and, at the time of relator's injuries, he was involved in maintenance work.
 {¶ 25} Although the employer was of the opinion that it was involved in "construction activities" such as defined in Ohio Adm. Code 4121:1-3-01(A) the SHO concluded that the employer could not waive the scope provisions in a claim where the state insurance fund was the real party at interest. Although this case involves a self-insured employer and the SHO's reference to the state insurance fund being the "real party in interest" is not entirely accurate, the SHO could have still determined that the code provision did not apply to this case. Ohio Adm. Code4121:1-3-01(A) provides, in pertinent part, as follows:
The purpose of this chapter of the Administrative Code is to provide safety for life, limb and health of employees engaged in construction activity. In cases of practical difficulty or unnecessary hardship, the Ohio bureau of workers' compensation may grant exceptions from the literal requirements of this chapter to permit the use of other devices or methods when it is clearly evident the equivalent protection is thereby secured.
Activities within the scope of this chapter, generally referred to herein as "construction", include the demolition, dismantling, excavation, construction, erection, alteration, repair, painting, decorating, glazing, cleaning, and pointing of buildings and other structures and the installation of machinery or equipment and all operations in connection therewith; the excavation, construction, alteration and repair of subways, sewers, tunnels, trenches, caissons, conduits, pipelines, roads and all operations pertaining thereto; the moving of buildings, signs, and other structures, and to the construction, alteration, repair, or removal of wharfs, piers, abutments, or any other construction, alteration, repair, or removal work carried on, in, about, or over water.
This chapter covers construction activities of employees whose employer engages in such work as its principal business. It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure, but does not cover employees of such other employers when the activities are performed in the ordinary course of maintenance work.
 {¶ 26} As stated previously, the testimony revealed that respondent-employer was engaged in the business of installing raised pavement markers along highways and providing for their maintenance. Since the code provides that the term "construction" includes "constructions * * * and repair of * * * roads and all operations pertaining thereto," this work appears to be contemplated by the code provisions. However, the testimony does not reveal whether the principal business is installation or maintenance. This was a question of fact for the commission to determine and, based upon a review of the record, this magistrate finds that relator has not demonstrated that the commission abused its discretion in this regard.
 {¶ 27} As stated previously, in order to prevail, relator had the burden of establishing that an applicable and specific safety requirement applied, that the employer failed to comply with the requirement, and that the failure to comply was the cause of his injuries. Relator failed to present any evidence at the hearing that the extent of his injuries would have been lessened had he been wearing a hard hat. As such, the commission did not even have to address this issue at all.
 {¶ 28} However, even if those sections were to apply, this magistrate finds that the commission did not abuse its discretion when it determined that the use of head protection would not have mitigated relator's injuries.
 {¶ 29} When the SHO rendered his decision, he relied upon the medical report of Dr. Koppenhoefer who opined that the use of protective head gear would not have been sufficient to prevent the significant head injuries which relator sustained. The code provision cited by relator provides for protective head gear which is capable of withstanding the impact of an eight pound steel ball dropped on to the center of the top of the helmet from a height of five feet without transmitting average force of more than 850 pounds. The evidence indicated that the vehicle which struck relator in the head was traveling between 50 and 55 miles per hour. Based upon a review of the evidence, this magistrate concludes that the commission did not abuse its discretion in determining that a safety helmet would not have mitigated relator's injuries. The fact that relator submitted a report from Dr. Blatman with his motion for rehearing is irrelevant as that information was not before the SHO at the record hearing. As the commission determined, relator did not submit any new evidence that could not have been attained with due diligence nor had relator shown an obvious mistake of fact or clear mistake of law and the commission denied his motion for reconsideration.
 {¶ 30} Even if this court was to find that the code provisions applied, this magistrate finds that the commission did not abuse its discretion in finding that relator did not establish that the lack of a hard hat was the proximate cause of his injuries nor did he show that the use of a hard hat would have mitigated his injures. As such, this magistrate recommends that the court deny relator's request for a writ of mandamus.
 /S/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE