THE STATE EX REL. US AIRWAYS, INC., APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. US Airways, Inc. v. Indus.
Comm.* (2000), 90 Ohio St.3d 252.]

(No. 99–2—Submitted August 22, 2000—Decided November 8, 2000.)

*Day, Ketterer, Raley, Wright & Rybolt, Ltd., Darrell N. Markijohn* and *Aaron E. McQueen,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellees Industrial Commission and Administrator, Ohio Bureau of Workers' Compensation.

---

*Per Curiam.* Although US Airways submits five propositions of law, these are reviewable in the context of just two overriding issues: (1) Did the commission abuse its discretion in granting rehearing? and (2) Is the commission's VSSR order fatally unclear? For the reasons that follow, we hold that new and additional evidence permitted the commission's decision to grant rehearing but that the commission failed to cite evidence from which it could have legitimately assessed a VSSR. Accordingly, we reverse the court of appeals' judgment denying all relief and grant a limited writ ordering the commission's further review.

### Rehearing

US Airways first argues that the commission had no new and additional evidence justifying rehearing. We reject this argument for the reasons cited by the court of appeals.

The court of appeals properly recognized that the supervisor's affidavit, at least, constituted new and additional evidence. As its magistrate explained:

"In contending that the information contained in [the supervisor's] affidavit is not new evidence, but merely repetitive or cumulative of prior evidence, [US Airways] simply ignores the significance of the *source* of the information contained in the affidavit. As the ramp supervisor, Gregory Prewitt was presumably

Myers' supervisor and also was a company official with some authority over the area in which Myers worked.

"Prewitt's affidavit seriously undermined [US Airways'] evidence that company policy forbade employees such as Myers from entering the conveyor while the system was energized.

"Prewitt's affidavit seriously undermined the factual premise of the first hearing officer's decision that [US Airways] had not violated Ohio Adm.Code 4121:1–5–17(E). The first hearing officer reasoned that there was no foot hazard to Myers from the conveyor system while Myers was carrying out his assigned duties because his assigned duties did not require him, and in fact forbade him, to enter or stay in the conveyor system while it was operating. Prewitt's affidavit strongly suggests that it was indeed company policy that required or at least permitted Myers and his co-workers to do exactly what they did on the date of injury in attempting to clear the jammed bags."

Thus, the court of appeals' judgment on this issue is affirmed.

*Clarity*

Ohio Adm.Code 4121:1–5–17(E) provides:

"Foot protection shall be made available by the employer and shall be worn by the employee where an employee is exposed to machinery or equipment that presents a foot hazard or where an employee is handling material which presents a foot hazard."

The commission initially found no violation of this safety regulation because Myers was never "exposed to machinery" in a way that presented a foot hazard. The first SHO came to this conclusion for two reasons: (1) Myers was not "exposed to contact" as defined by Ohio Adm.Code 4121:1–5–01(B)(47), which requires the exposure to occur "in performance of [the employee's] regular or assigned duty," and (2) Myers was injured by the improper motor installation and not by the conveyor system *per se*. For both findings, the SHO relied on a US Airways customer service manager's affidavit, which stated that (1) airline policy prohibited employees from standing on or entering any conveyor unless the entire system was shut down, and (2) conveyor belts properly running in the same direction would not have created the "pinch point" that caused Myers's injury.

But on rehearing, Gregory Prewitt, who had worked for US Airways for thirteen years and had been a ramp supervisor on the day of Myers's injury, advised:

1. "It [was] a common practice for [US Airways] employees at the Columbus station to keep the system of conveyors operating by standing on a down section of conveyor (just as [Myers] did) and throwing bags moving down the conveyor

sections from the ticket counter to the conveyor sections still moving to the bag room."

2. "Everyone knew that when the conveyor system shut down, you had to do whatever it took to keep the conveyor system operating and the bags moving."

3. "It [was] a normal part of our assigned job duties to climb into the system of conveyors."

4. "[T]he Columbus manager * * * never objected to this procedure."

5. The customer service manager who had testified for US Airways in the first VSSR hearing "[had] not [been] assigned to Columbus at the time of [Myers's] accident."

Prewitt also disputed the first SHO's finding that the incorrect motor installation was the proximate cause of Myers's injury:

"It does not take two in-running conveyor sections to be caught. Although it would be easier to be drawn between two conveyor sections when the conveyor sections are running together, the same type of accident could occur when one conveyor section is down and the abutting conveyor is running."

As the court of appeals observed, Prewitt contradicted the first SHO's reasons for denying VSSR relief and, therefore, his evidence was "new and additional" as well as relevant, and might have been used to grant VSSR compensation on rehearing. Ohio Adm.Code 4121–3–20(G)(1)(a). But for some reason, the second SHO apparently did not consider the real substance of Prewitt's affidavit, choosing instead to focus on foot injuries sustained by Myers's co-workers from other hazards such as handling luggage and using carts. The result is an overreaching discussion that creates more confusion than clarity.

More specifically, the second SHO found a VSSR at the same time he observed that no evidence suggested that the particular foot hazard encountered by Myers could possibly have been foreseen by US Airways. Then to justify his award, the SHO relied on foot hazards that were not the cause of Myers's injury. US Airways attacks these flaws on grounds of causation, foreseeability, and strict construction, all of which represent strains in its overriding theme—that the order is fatally unclear.

We agree. As it stands now, the commission's order is too confused to fairly impose VSSR liability. The commission has no authority to penalize an employer for failing to protect employees from foot hazards that have nothing to do with the claimant's injury. In fact, we recently rejected this sweeping approach to finding VSSRs for "potential" foot hazards in *State ex rel. Burchfield v. Printech Corp.* (1998), 83 Ohio St.3d 169, 699 N.E.2d 56. *Burchfield* held that even if a foot hazard existed in the claimant's workplace, the commission could not grant a VSSR award unless that foot hazard actually caused the claimant's injury.

We are thus faced with a commission order that fails to cogently explain the evidence and reasoning for granting a VSSR award. In a similar case, *State ex rel. Martin Painting & Coating Co. v. Indus. Comm.* (1997), 78 Ohio St.3d 333, 343, 678 N.E.2d 206, 214, we returned the cause to the commission with instructions to remedy this insufficiency. We follow that procedure here and grant a limited writ. The commission is therefore ordered to conduct further proceedings consistent with our opinion including to provide adequate explanation as to why the VSSR award must be granted or denied.

*Judgment affirmed in part,*
*reversed in part*
*and limited writ granted.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment.