DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Geneva Darling-Ramos, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for an additional award of a violation of a specific safety requirement ("VSSR"), and ordering the commission to find that she is entitled to an additional award for a VSSR. In the alternative, relator requests that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's request for a rehearing on her application for a VSSR.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, concluding with the determination that the commission had not abused its discretion in denying relator's application for an additional award for the VSSR and that this court should deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator filed the following objection to the decision of the magistrate: The magistrate erred in failing to address Paramount's non-compliance with Ohio Adm. Code 4121-3-09(A)(1)(a).
 {¶ 4} No objection has been made to the factual findings of the magistrate's decision. Relator's sole objection is that the commission abused its discretion in denying relator's motion for a rehearing because relator was "ambushed" by an opinion of Thomas Wilford, a part-time engineering management consultant, who consults in the area of factory automation, machine and equipment troubleshooting, maintenance and equipment design and control. Relator complains that this witness was identified only two days before the hearing and that Paramount's counsel indicated that he would not be giving expert testimony but would only be testifying as to factual issues. Relator's counsel alleges that, to his surprise, Wilford offered the expert opinion that, even though the dual-cam system was jumpered and modified, it did not defeat the anti-repeat mechanism of the machinery and that an anti-repeat mechanism existed as required by Ohio Adm. Code 4121:1-5-10(C)(5), the specific safety requirement alleged to have been violated.
 {¶ 5} As stated in the magistrate's decision, the accident herein occurred when relator was operating a punch press, which came down on her right hand causing rather severe injuries to that hand There was also no question that Paramount modified the press prior to relator's injuries, removing a safeguard intended to prevent accidental malfunction of the press resulting in an anti-repeat feature protecting the operator. Paramount's theory of the action was that the punch press originally had redundant anti-repeat features. In other words, in this configuration, if one of the anti-repeat features were to fail, ideally the other anti-repeat feature would still work. Paramount argued that the specific safety requirement in question, Ohio Adm. Code4121:1-5-10(C)(5)(e)(iii), provides that "the two hand control system shall incorporate an anti-repeat feature." The staff hearing officer ("SHO") concluded that the foresaid rule requires only a single anti-repeat feature, not more than one, and, therefore, the removal of the dual anti-repeat feature would not constitute a violation of that section even if under the circumstances the single remaining anti-repeat feature did not protect relator from an accidental repeat and that the press, as originally equipped with two anti-repeat features, would have protected relator from the harm that took place.
 {¶ 6} It should be noted that relator does not contest the fact that the specific safety requirement in question requires only one anti-repeat safeguard, but contends that the testimony of Gary Ash, general manager, Edward Miyoshi, plant manager, and Tom Wilford, a consultant and employee with the employer, all of whom testified that there were originally two anti-repeat features but that the alterations still left the punch press with one anti-repeat feature, was incorrect and that relator could establish that by use of an additional consultant who contradicted their testimony. Relator produced the affidavit of Richard E. Harkness who opined that the testimony submitted by the above witnesses, indicating that the press still contained an anti-repeat function, was false and that it demonstrated a lack of understanding on their part as to what constitutes an anti-repeat feature. The motion for a rehearing was denied by the SHO who held that claimant had not submitted any new and relevant evidence, or shown that the order of January 28, 2002, was based on an obvious mistake of fact on a clear mistake of law, nor had the claimant submitted new evidence that was not merely cumulative and could not have been timely obtained.
 {¶ 7} In relator's mandamus action, relator asserts that the ruling of the commission denying her motion for rehearing was an abuse of discretion and a violation of the principles set forth in Ohio Adm. Code 4121-3-09(A)(1)(a), which provides as follows: "[t]he parties or their representatives shall provide to each other, as soon as available and prior to hearing, a copy of the evidence the parties intend to submit at a commission proceeding."
 {¶ 8} Ohio Adm. Code 4121-3-20(C)(1)(a) sets forth the standard to be used to justify a rehearing of the SHO's order. This rule provides that "the motion shall be accompanied by new and additional proof not previously considered and which by due diligence could not be obtained prior to the prehearing conference, or prior to the merit hearing if a record hearing was held and relevant to the specific safety requirement violation."
 {¶ 9} There are two reasons why relator's argument should be rejected. First, Ohio Adm. Code 4121-3-09(A)(1)(a) provides that parties or their representatives shall provide to each other as soon as available and prior to hearing "a copy of the evidencethe parties intend to submit at a commission proceeding." (Emphasis added.) Since this rule requires that parties or their representatives provide to each other, prior to hearing, a copy of the evidence the parties intend to submit, it seems to apply only to evidence produced by way of affidavit or paper rather than live testimony which does not take written form. Hence, the rule did not require Paramount to disclose the substance of Wilford's testimony prior to hearing and there was no error on the part of the magistrate by not addressing this rule in her decision.
 {¶ 10} Second, relator's argument that she was surprised by Wilford's testimony and needed to obtain evidence to contradict that testimony is without merit. Clearly she could have submitted testimony or other evidence prior to or during the SHO hearing that showed the modification of the anti-repeat feature defeated all safety features that existed on the machine to which the specific safety repairment referred. Thus, relator could have submitted evidence contradicting Wilford's opinion at the hearing itself. After all, the existence of "an anti-repeat" feature was the issue central to the SHO's determination as to the violation of Ohio Adm. Code 4121:1-5-10(C)(5). Consequently, it was not an abuse of discretion for the SHO to find that relator had failed to show that the "new" evidence was not merely cumulative and could not have been timely obtained. It was obvious at the hearing that the witnesses of Paramount relied upon by the SHO were making the contention that, even with the renewal of one anti-repeat device, a separate anti-repeat device still was in place. There was not a request for an extension of the hearing to obtain additional testimony or any objection until the SHO issued his opinion.
 {¶ 11} Relator's own evidence appears to have anticipated this defense in that the affidavits and expert reports of Al Lucas and Roger W. Hale both opine that Paramount's modification of the anti-repeat mechanism disabled the machine. Wilford's testimony contradicted that testimony by stating that the modification did not defeat the anti-repeat mechanism. Although Wilford may have rebutted the affidavits in a manner that relator did not expect does not mean that Wilford's testimony was "surprise" evidence requiring the SHO to reconsider his original ruling. If relator believed that, in fairness, she needed additional time to develop further evidence she could have requested a continuance of the hearing.
 {¶ 12} The magistrate has adequately explained why it was not an abuse of discretion for the SHO to rely upon the testimony of Gary Ash in words that we adopt as our own. For the reasons set forth in this decision, and in the decision of the magistrate, relator's objection to the magistrate's decision is overruled.
 {¶ 13} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule the objection and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ of mandamus denied.
Brown and Klatt, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Geneva Darling-Ramos, : Relator, : v. : No. 03AP-941 Paramount Stamping and Welding Co., : (REGULAR CALENDAR) James Conrad, Administrator Bureau : of Workers' Compensation and : The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 3, 2004 Dworken Bernstein Co., L.P.A., and Kristen M. Sherlock,
for relator.
Roetzel Andress, Robert E. Blackham, Lynn A. Gross andBrian W. Stano, for respondent Paramount Stamping and Welding Co.
Jim Petro, Attorney General, and Erica L. Bass, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 14} Relator, Geneva Darling-Ramos, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for an additional award of a violation of specific safety requirement ("VSSR") and ordering the commission to find that she is entitled to the additional award for a VSSR. In the alternative, relator requests that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's request for a rehearing on her application for a VSSR.
Findings of Fact:
 {¶ 15} 1. Relator sustained a work-related injury on January 9, 1998 when the punch press she was operating came down on her right hand The following conditions have been allowed in her claim:
Fracture mid/prx phal, hand right thumb, open wound of right thumb, amputation right 2nd and 3rd finger, crushing injury right hand, open wound of right fifth finger, open wound of fourth finger, prolong post-traumatic stress, adhesive capsulitis right shoulder; major depression single episode.
(Emphasis sic.)
 {¶ 16} 2. The Warco 6 press on which relator was working was designed and manufactured with dual palm buttons, dual cams, and dual pneumatic valves. (Stip. 108.) According to the testimony, the dual cams operated separately from one another, creating redundant anti-repeat features, which were designed to prevent the machine from cycling repeatedly on its own and without any action by the operator. (Stip. 149.) The press was also equipped with a feeder that fed or removed parts from the machine. (Stip. 36.) Respondent Paramount Stamping and Welding Company ("employer") modified the Warco 6 prior to relator's injury. Specifically, the feeder was removed, the dual cams were wired to act as a single cam, and a foot pedal was installed. The foot pedal replaced the dual palm buttons as the mechanism for initiating the press cycle.
 {¶ 17} 3. According to the testimony, several days prior to her injury, relator and a co-worker were observed using the press in an unsafe manner. One employee pressed the foot pedal while the other employee reached in to retrieve and/or place parts in the press. The employer's maintenance department replaced the foot pedal with the dual palm buttons; however, the feeder was not replaced.
 {¶ 18} 4. On January 9, 1998, relator was operating the Warco 6 press alone utilizing the dual palm buttons. In this mode, it was necessary for relator to reach into the press twice, once to place the part in the machine for it to be stamped, and once to remove the stamped part once the cycle was completed. At the time of her injury, relator was either placing a part in the machine or removing a completed part when the top die came down on her right hand and amputated several of her fingers. Another employee, Onie Whitehair, ran to assist relator and saw that the machine continued to cycle on its own. (Stip 19-20, 123-124.)
 {¶ 19} 5. The employer investigated the cause of relator's accident and determined that a sprocket on the press had malfunctioned. This caused the press to continue to cycle after it should have stopped, resulting in relator's injury. According to the testimony of Gary Ash, general manager, Edward Miyoshi, plant manager, and Tom Willford, a consultant and employee with the employer, the Warco 6 originally had redundant anti-repeat features. In this configuration, if one of the anti-repeat features was to fail, ideally, the other anti-repeat feature would still work. At the time of relator's injury, the Warco 6 press had only one anti-repeat feature operative. When a sprocket came loose, the anti-repeat feature was disabled and the machine continued to cycle, resulting in relator's injuries.
 {¶ 20} 6. Relator submitted the affidavit of Roger W. Hale, a consultant. Mr. Hale indicated that the modification to the Warco 6 press disabled the dual cams and the dual pneumatic valves which would have protected the operator in case of a mechanical failure. Mr. Hale opined that this created an unreasonable risk of injury to the operator, which the employer knew about but disregarded. (Stip 111, 131.)
 {¶ 21} 7. Following a hearing before a staff hearing officer ("SHO") on January 8, 2002, relator's application for an additional award for a VSSR was denied. The SHO provided the following pertinent explanation:
It is the finding of the Staff Hearing Officer that the Application for Violation of a Specific Safety Requirement be denied for the reason that the claimant has cited no specific safety requirement that was violated when the claimant sustained the injury of record.
* * *
It is found that the remaining sections specifically cited on the claimant's Application for Violation of a Specific Safety Requirement are: 4121:1-5-10(C)(5)(a); 4121:1-5-10(C)(5)-(e)(iii-v); and 4121:1-5-10(D)(3)(a).
It is the finding of the Staff Hearing Officer that the claimant sustained an injury on 01/09/1998 as the result of a press coming down on her hand
Section 4121:1-5-10 is the general section dealing with mechanical power press. There is no dispute that the claimant was operating a mechanical power press at the time of her injury. Section 4121:1-5-10(C)(5)(a) provides that "the clutch shall release and the brake shall be applied when the external clutch engaging means is removed, deactivated or deenergized." The claimant made no argument nor presented any evidence relevant to a violation of this section. The Staff Hearing Officer finds no violation of this section.
Section 4121:1-5-10(C)(5)(e)(iii) provides that "the two hand control system shall incorporate an anti-repeat feature." The Staff Hearing Officer finds the testimony is undisputed that the press at issue was designed as a dual cam with a redundant anti-repeat feature. Per the testimony of Mr. Ash (transcript p. 30), the original redundant anti-repeat feature was modified to a single anti-repeat system. According to the testimony of Mr. Wilford (transcript p. 51-52), the cams operate independently. Consequently, when one cam was bypassed, the other cam anti-repeat feature continued to operate. Mr. Miyoshi (transcript p. 39) testified that there was a single anti-repeat feature incorporated on the machine at issue at the time of the claimant's injury. The Staff Hearing Officer finds no persuasive evidence that bypassing one cam rendered the other non-functional. As the above code section only requires an anti-repeat feature, the Staff Hearing Officer finds no violation of this section.
Section 4121:1-5-10(C)(5)(e)(iv) provides "the control system shall require the operator to release all hand controls before an interrupted stroke can be resumed." The Staff Hearing Officer finds no evidence to support a violation of this section. There is no dispute that both dual palm buttons must be released before an interrupted stroke can be resumed.
Section 4121:1-5-10(C)(5)(e)(v) deals with controls on multiple-station presses. There is no evidence that the claimant was operating a multiple-station press. Therefore, the Staff Hearing Officer finds no violation of this section.
The last code section cited is 4121:1-5-10(D)(1)(a). That section provides it shall be the responsibility of the employer to provide and require the usage of properly applied and adjusted "point of operation devices." The dual palm buttons are point of operation devices.
The claimant does not allege nor did she present evidence that the dual palm buttons were not properly applied and adjusted. The Staff Hearing Officer finds no violation of this section.
In conclusion, the Staff Hearing Officer finds no violation of any of the specific code sections cited. Therefore, the VSSR application filed 12/21/1998 is denied.
(Emphasis sic.)
 {¶ 22} 8. Following the decision of the SHO, relator obtained the expert opinion of an additional consultant who contradicted the testimony offered by Gary Ash, Edward Miyoshi and Tom Wilford. Richard E. Harkness opined that the testimony submitted by the above witnesses indicating that the press contained an anti-repeat function was false and that it demonstrated a lack of understanding on their part as to what constitutes an anti-repeat feature. In denying relator's motion for rehearing, the SHO stated, in pertinent part, as follows:
It is hereby ordered that the motion for rehearing filed 04/10/2002 be denied. The Claimant has not submitted any new and relevant evidence nor shown that the order of 01/28/2002 was based on an obvious mistake of fact or on a clear mistake of law. Nor has the claimant submitted new evidence that is not merely cumulative and could not have been timely obtained.
The issues raised in the claimant's rehearing request revolve around the question of a modification of the equipment in question and its effect on an anti-repeat mechanism. Since the claimant obtained and submitted a report from a Roger W. Hale on this issue, as well as an affidavit from an Al Lucas, it is clear that claimant was aware of the issues in question before the hearing. The new report of Richard Harkness was obtained to contradict the testimony at hearing from Thomas Wilford, who testified as to the modifications of the equipment in question and its effect on the anti-repeat mechanism. However, the claimant already had the previously noted evidence from Mr. Lucas and Mr. Hale to contradict Mr. Wilford's testimony. Therefore, the report of Dr. [sic] Harkness is found to be cumulative and not new evidence that could not have been timely obtained.
Further, the fact there are differing opinions from different experts and witnesses does not amount to an obvious mistake of fact.
 {¶ 23} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 25} In regard to an application for an additional award for a VSSR, relator must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer failed to comply with the requirement, and that the failure to comply was the cause of the industrial injury in question. State ex rel. Trydle v. Indus.Comm. (1972), 32 Ohio St.2d 257. The interpretation of a specific safety requirement is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm. (1983),4 Ohio St.3d 193. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State ex rel. Burtonv. Indus. Comm. (1989), 46 Ohio St.3d 170.
 {¶ 26} In this mandamus action, relator contends that the commission abused its discretion in finding that the Warco 6 press machine had an anti-repeat feature as required by Ohio Administrative Code and that the commission abused its discretion in not granting a rehearing. With regard to the anti-repeat feature, Ohio Adm. Code 4121:1-5-10(C)(5)(e) provides:
Two-hand controls for single stroke.
Two-hand controls for single stroke shall conform to the following requirements:
* * *
(iii) The two-hand control system shall incorporate an antirepeat feature.
(iv) The control system shall require the operator to release all hand controls before an interrupted stroke can be resumed.
(v) Where two-hand trip controls are used on multiple-station presses, there shall be a separate set of controls for each designated employee. Controls shall be activated and deactivated in sets of two. The clutch/brake control system shall prevent actuation of the clutch if all operating stations are bypassed.
 {¶ 27} In the present case, the commission relied upon testimony from witnesses who maintained that the Warco 6 press, as modified, did in fact contain an anti-repeat feature. The fact that the Warco 6 press previously contained redundant anti-repeat features, which may have worked to prevent relator's injuries, is of no consequence in this action, as the machine was only required to have one anti-repeat feature. Based upon this testimony, the commission found that the employer had met the requirements of the above-cited Ohio Administrative Code provisions and, as such, relator was not entitled to an additional award for a VSSR, as relator was not able to prove that the employer had violated the above-cited provisions. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder.Teece, supra. In finding that there was no violation of the above-cited Ohio Administrative Code provision, relator has not demonstrated that the commission abused its discretion and a writ of mandamus should not issue.
 {¶ 28} Relator also contends that the commission abused its discretion in denying her request for a rehearing based on new and additional proof, as well as an obvious mistake of fact. Relator contends that the employer's theory that the machine actually had an anti-repeat feature was a novel argument which relator did not anticipate prior to the hearing before the SHO. In denying her motion for a rehearing, the commission found that the issues raised in relator's rehearing request involved the impact of the modification on the Warco 6 press and its effect on any anti-repeat mechanism. Based upon the report of Mr. Hale and the affidavit of Mr. Lucas, the commission determined that relator was aware of the issues involved at the hearing and that the new report was simply obtained to contradict the testimony at hearing. As such, the commission denied the request.
 {¶ 29} With regard to requests for rehearings, Ohio Adm. Code4121-3-20(C) provides, in pertinent part, as follows:
Within thirty days of the receipt of the order of the staff hearing officer deciding the issues presented by the application, either party has the right to file a motion requesting a rehearing. The party requesting a rehearing shall provide a copy of the motion for rehearing to the opposing party and its representative. The opposing party has thirty days in which to file an answer. A motion for rehearing is not to be adjudicated until the answer has been received or the expiration of the thirty-day period.
* * *
(a) In order to justify a rehearing of the staff hearing officer's order, the motion shall be accompanied by new and additional proof not previously considered and which by due diligence could not be obtained prior to the prehearing conference, or prior to the merit hearing if a record hearing was held and relevant to the specific safety requirement violation.
(b) A rehearing may also be indicated in exceptional cases where the order was based on an obvious mistake of fact or clear mistake of law.
 {¶ 30} Relator cites State ex rel. US Airways, Inc. v.Indus. Comm. (2000), 90 Ohio St.3d 252, in support of her argument that the commission abused its discretion in denying her request for rehearing. In US Airways, the Ohio Supreme Court upheld the commission's decision granting a rehearing, in that particular case, on the grounds that the testimony being offered by the claimant was new evidence that had not been previously submitted, was not duplicative of other evidence previously submitted, and undermined the employer's arguments made at the original VSSR hearing. However, US Airways differs from this case in one very important manner: in US Airways, the commission originally denied the application for an additional award for a VSSR based upon an issue which did not involve the Ohio Administrative Code at all. In US Airways, the claimant was injured when his foot was caught in the conveyor belt as he attempted to un-jam baggage. The commission determined that, regardless of the Ohio Administrative Code, the employer's work rules forbade employees from clearing baggage jams while the conveyor system was in operation. In the present case, the issue raised was whether or not Warco 6 was installed with an anti-repeat feature at the time of relator's injury. The fact that relator's experts and the employer's experts had different opinions as to whether or not the modifications made to the Warco 6 had disabled the anti-repeat feature was the issue to be determined. As such, this magistrate finds that the commission did not abuse its discretion in the present case by denying relator's request for a rehearing.
 {¶ 31} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her application for an additional award for the violation of a specific safety requirement and this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks 
STEPHANIE BISCA BROOKS MAGISTRATE