THE STATE, EX REL. MOORE, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE; GENERAL MOTORS, FISHER BODY DIVISION, APPELLANT.

(No. 85AP-194—Decided September 17, 1985.)

*Deegan & McGarry* and *James J. McGarry,* for relator-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Jenice Golson,* for respondent-appellee.

*Baughman & Associates Co., L.P.A.,* and *Catherine M. Primuth,* for appellant.

BROGAN, J. Relator-appellee, Roger L. Moore, was injured during the course of his employment with General Motors, Fisher Body Division, the appellant herein, on May 5, 1979. On that day, appellee sustained a severe eye injury when a wood chisel being used by a co-worker splintered and sent metal fragments into appellee's left eye as he was speaking to his foreman. Appellee's eye was subsequently removed and replaced with an ocular prosthesis. It is undisputed that appellee was wearing protective glasses without side shields at the time he sustained the injury. On June 12, 1980, appellee filed a claim with the Industrial Commission, also an appellee in this action, for workers' compensation, and was subsequently awarded thirty percent permanent partial disability.

On June 13, 1980, appellee filed an application with the Industrial Commission for an additional award, alleging that appellant had violated specific safety requirements by providing him with safety glasses without side shields in violation of Ohio Adm. Code 4121:1-5-17(C)(1) and (2), and 4121:1-5-17(D)(1), (2), (3) and (4). In a decision issued on January 13, 1982, the district hearing officer denied appellee's application in its entirety. Appellee filed a motion for rehearing, alleging the existence of new evidence. The motion was granted and, following a hearing held on November 29, 1982, the Industrial Commission affirmed the denial of appellee's application.

On March 3, 1983, appellee initiated an original action in the Franklin County Court of Common Pleas seeking the issuance of a writ of mandamus compelling the Industrial Commission to grant his application for an additional award. On February 8, 1985, the trial court granted the writ on the ground that the Industrial Commission had abused its discretion in denying appellee's claim and remanded the case to the commission for an order consistent with the court's decision. The judgment entry was journalized on March 7, 1985, and appellant timely filed his notice of appeal from this judgment on March 11, 1985.

Appellant asserts four assignments

of error. The first three are set forth below:

"A. The Court of Common Pleas erred in granting Relator's Petition in Mandamus since it thereby improperly applied O.A.C. Section 4121:1-5-17 to an injury proximately caused by the unforeseeable breakage of a chisel used by a fellow employee which is outside the scope of O.A.C. Section 4121:1-5-17.

"B. The Court of Common Pleas erred in granting Relator's Petition in Mandamus since there was some evidence to support the Industrial Commission's denial of Relator's Application for Violation of Specific Safety Requirement and therefore no abuse of discretion by the Industrial Commission.

"C. The Court of Common Pleas erred in granting Relator's Petition in Mandamus since its decision contravenes prevailing Ohio case law."

These assignments of error all raise the issue of whether the trial court abused its discretion in granting relator-appellee's writ of mandamus on the basis that appellant had violated a specific safety requirement. We hold that it did not.

Section 35, Article II of the Ohio Constitution states in pertinent part:

"* * * [S]hall have full power and authority to hear and determine whether or not an injury * * * resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final * * *."

The determination of disputed factual situations, as well as the interpretation of specific safety requirements, is within the final jurisdiction of the Industrial Commission. *State, ex rel. Haines*, v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15 [58 O.O.2d 70]; *State, ex rel. Berry*, v. *Indus. Comm.* (1983), 4 Ohio St. 3d 193. Decisions of the commission are subject to correction by an action in mandamus only upon a showing of abuse of discretion. See *State, ex rel. Haines, supra*; *State, ex rel. Truckey*, v. *Indus. Comm.* (1972), 29 Ohio St. 2d 132 [58 O.O.2d 321]; *State, ex rel. Cox*, v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235, 241 [21 O.O.3d 147]; *State, ex rel. Berry, supra*; *State, ex rel. Lyburn Constr. Co.*, v. *Indus. Comm.* (1985), 18 Ohio St. 3d 277. An abuse of discretion exists where there is no evidence upon which the commission could have based its factual conclusion. *State, ex rel. Lyburn Constr. Co., supra*; *State, ex rel. Teece*, v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 167 [22 O.O.3d 400].

In his application for an additional award, relator-appellee claimed that appellant failed to comply with the following divisions of Ohio Adm. Code 4121:1-5-17:

"(C) Specific requirements of general application

"(1) Personal protective equipment furnished by the employer shall be issued to the employee in sanitary and proper condition so that it will effectively protect against the hazard involved.

"(2) Where employees provide their own protective equipment, such equipment shall give equal or greater protection than that furnished by the employer.

"(D) Eye and face protection

"(1) Responsibility

"The employer shall provide eye protection for all employees engaged in the operations listed in 4121:1-5-17 (D)(2) and exposed to an eye hazard. Eye protection shall also be provided for any other employees required to work in the immediate area and who are exposed to the hazards of the operations listed. It shall be the responsibility of the employee to use the eye protection provided by the employer (see section 4101.12 R.C. and section 4101.13 R.C.)

"(2) Operations requiring eye protection

"(a) Eye protection shall be provided to employees performing the following operations:

"(i) When using hand tools or mechanical equipment to cut, *chip*, drill, clean, buff, grind, polish, shape, or surface masonry, brick, concrete, plaster, stone, plastics, or other hardened substances. This also covers demolition work where the materials listed are part of the operation;

"* * *

"(ix) Metal and plastic chipping, cutting, cleaning, grinding, conditioning, or machining where there is danger of flying particles." (Emphasis added.)

Following the commission's initial denial of an additional award, relator-appellee was granted a rehearing, whereby he submitted a booklet distributed by the Industrial Commission, Division of Safety and Hygiene, entitled "An Educational Safety Guide for: Eye Protection," in support of his contention that appellant violated specific safety requirements when it failed to provide him with safety glasses with side shields. The publication states that "[n]on-sideshield spectacles are available for limited hazard use requiring only frontal protection"; however, the publication also states that glasses without side shields are "not recommended." The hearing officer who recommended that a rehearing be granted determined that:

"4121:1-5-17(D)3 refers to face shields in lieu of other forms of eye protection. Note '* * * they *shall* be provided where additional protection for the face is necessary.'

"The injury on this claim was due to eye glasses not having side shields. It is obvious from the fact that claimant's eye was 1) struck from the side and 2) the nature of the job (particularly working along side of other chiselers) would make it common sense to provide eye glasses with side protection. This was not done here. Also claimant has submitted new evidence (published by S & H) which confirms the above.

"Therefore based on the above-cited section and new evidence submitted it is the opinion of this SHO that a rehearing is warranted."

Relator-appellee's claim for an additional award was again denied on January 19, 1983 following the rehearing. The Industrial Commission determined that relator-appellee's injury did not result from appellant's violation of a specific safety requirement adopted by either the General Assembly or the Industrial Commission.

The trial court granted relator-appellee's writ of mandamus on February 8, 1985 and stated in pertinent part:

"The Commission found that there was no violation of Ohio Administrative Code [Section] 4121:1-5-17(C). This section requires that equipment issued to employees 'will effectively protect against the hazard involved.' The safety glasses furnished to the claimant had no side shields. A foreign object entered his eye because he turned his head.

"It should be anticipated that employees will turn their heads, as did the claimant, and will be unprotected at that time. The Court concludes that safety glasses with no side shields do not 'effectively protect' employees such as the claimant and, therefore, a writ of mandamus * * * is proper."

We agree.

Appellant first contends that a chisel which splinters, as a result of use by an employee other than claimant, is an unforeseeable event which is without the scope of Ohio Adm. Code 4121:1-5-17. This argument is without merit. First, Ohio Adm. Code 4121:1-5-17(D) (1) clearly states that eye protection "* * * *shall* also be provided for *any other employees required to work in the immediate area* and who are exposed to the hazards of the operations listed. * * *"" (Emphasis added.) The fact that

relator-appellee was not himself engaged in the chipping operation at the time of his injury is not dispositive to a determination of whether appellant violated a specific safety requirement. See *State, ex rel. Berry, supra.* The record contains uncontroverted evidence that relator-appellee was regularly required to work in the immediate area of other chipping operators.

Second, an eye injury occurring as the result of a splintered chipping utensil is by no means unforeseeable. Ohio Adm. Code 4121:1-5-17(D)(2)(a)(ix) clearly mandates that eye protection is required for employees engaged in and in the area of "* * * chipping * * * where there is danger of flying particles." The Ohio Administrative Code does not specify whether the particles must derive from the material being chipped or the instrument itself. Consequently, relator-appellee was exposed to an eye hazard which is definitely covered by the code by virtue of his proximity to the chipping operation. Although appellant maintains that chipping requires only frontal protection because the employee need only face and look directly at the object, we find such assertion to be manifestly unreasonable. An individual may turn his head to the side for any number of reasons, whether to speak to a co-worker or, as in the case *sub judice,* to leave his immediate station to speak with his foreman. To expect an employee to keep his head in a frontal position at all times is illogical as well as impossible.

Appellant next contends that some evidence existed to support the commission's denial of relator-appellee's application based upon an investigator's report, which indicated that appellee had his back to the material he would have been facing had he been at his station. We find this approach to be unpersuasive. The Ohio Administrative Code does not prohibit body movement but it does require adequate eye protection for employees in the immediate area of a hazardous operation. Accordingly, while evidence may exist which indicates that appellee turned his back, such evidence is of no consequence when the code clearly mandates protection for employees and bystanders in the immediate area.

Appellant also maintains that Ohio Adm. Code 4121:1-5-17 does not contain a specific provision requiring an employer to provide safety glasses with side shields. Appellant supplements its argument by claiming that it would provide any employee with glasses with side shields upon request. However, this court notes that Ohio Adm. Code 4121:1-5-17(C)(1) clearly requires that personal protective equipment furnished by the *employer* "* * * shall be issued * * * so that it will effectively protect against the hazard involved." Nowhere in the code is the burden of obtaining the most effective protection placed on the individual employee.

In addition, while appellant emphasizes that the code makes no specific provision for side shields and only requires certain lens thickness, flammability and penetration resistance, we are not convinced that side shield protection is excluded. The code still requires that protective equipment provide "effective protection" against the hazard involved. Chipping creates a hazard of flying particles. The Industrial Commission's "Eye Protection" booklet displays eleven varieties of eye and face protectors, ten of which include side shields. The booklet states that style A spectacles, without side shields, are "not recommended." While these recommendations do not have the force and effect of law or a commission regulation, this court finds it highly unlikely that appellant had no knowledge that side shield spectacles were strongly recommended by the commission for all hazardous operations. Assuming, *arguendo,* that appellant was not aware of the

recommendations, common sense dictates that appellant would be on notice that an employee might turn his head and be injured by a splinter when he is engaged in or in the area of a hazardous operation.

Finally, while appellant correctly states that an employer is not a guarantor that a safety device will not fail (see, e.g., *State, ex rel. M.T.D. Products,* v. *Stebbins* [1975], 43 Ohio St. 2d 114 [72 O.O.2d 63]), the single failure exception to the specific safety requirement rule simply does not apply in this case. Here, we do not have a case of an isolated mechanical failure. Rather, this is a case where the proper safety device was not provided by appellant at all and similar injuries could occur again.

This court recognizes that factual determinations are within the final jurisdiction of the Industrial Commission; however, in the case *sub judice,* the record contains no evidence upon which the commission could have based its factual conclusions. The commission abused its discretion in determining that appellant did not violate a specific safety requirement and we find no error in the trial court's decision to grant relator-appellee's writ of mandamus. Appellant's first three assignments of error are overruled.

Appellant's fourth assignment of error states:

"D. In granting Relator's Petition in Mandamus and finding that the ANSI approved safety glasses provided by Appellant were not 'effective protection' as required by O.A.C. 4121:1-5-17(C)(1), the Court of Common Pleas erred by depriving Appellant of due process of law as provided by the Ohio and United States Constitutions in failing to give Appellant adequate prior notice of its duty thereunder so as to comply therewith."

Appellant contends that it has been denied due process by virtue of the fact that no *specific* safety requirement mandates that an employer must provide an employee with safety glasses with side shields. Consequently, appellant maintains that it had no notice that it was expected to provide protective eye equipment of that nature. We disagree.

In essence, appellant simply reiterates the arguments already addressed, *supra,* and we find that appellant should have been on notice that, where a hazardous operation involves the risk of flying particles, frontal eye protection is simply not adequate. In addition, the Industrial Commission's booklet on eye protection clearly indicates that non-side-shielded glasses are not recommended. Regardless of whether appellant was not aware of these recommendations, common sense would clearly support the conclusion that chipping particles may fly in any direction, requiring effective eye protection for the front and side of the eyes.

While it is true that the particular activity at issue must fall within the coverage of a specific safety requirement in order to put an employer on notice of its responsibilities and to merit an additional award (see *State, ex rel. Sorrells,* v. *Mosier Tree Service* [1982], 69 Ohio St. 2d 341 [23 O.O.3d 312]; *State, ex rel. Trydle,* v. *Indus. Comm.* [1972], 32 Ohio St. 2d 257 [61 O.O.2d 488]), we find that this requirement has been met in this case. Ohio Adm. Code 4121:1-5-17(C) and (D) require that employers provide *effective* eye protection for hazardous operations, *including chipping.* Clearly, as the facts of this case demonstrate, frontal safety glasses are neither effective nor adequate where there is a risk of flying particles, unless the operator or individual in the immediate area never moves his body or turns his head. As we have already noted, this is an unreasonable expectation. Appellant's fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and STRAUSBAUGH, J., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.