THE STATE EX REL. COFFMAN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE; LINCOLN ELECTRIC COMPANY, APPELLANT.

[Cite as *State ex rel. Coffman v. Indus. Comm.,*
109 Ohio St.3d 298, 2006-Ohio-2421.]

(No. 2005–0851—Submitted February 7, 2006—Decided May 31, 2006.)

**Per Curiam.**

{¶ 1} Appellant, Lincoln Electric Company, appeals from a decision of the Tenth District Court of Appeals that ordered appellee Industrial Commission of Ohio to vacate its determination that Lincoln had not committed a violation of a specific safety requirement ("VSSR"). We affirm the judgment of the court of appeals.

{¶ 2} Lincoln Electric Company built welding machines. During the final inspection process, each machine was connected to a live power source for testing. The power was transmitted from a testing panel by three wire leads that were attached to the machine with alligator clips.

{¶ 3} Lincoln trained all inspectors to first turn the power off at the test panel. As a precaution, red and green lights would flash and meters would remain lit if the power was on. The test panel went dark if power was properly deactivated.

{¶ 4} Once power was deactivated, the inspector hooked the leads from the panel to the welding machine. The power was reinstated, and the inspector ran a series of tests on the machine. At the conclusion, the inspector again shut down the power, removed the leads from the machine, and repeated the process on the next machine.

{¶ 5} Brian Coffman was performing inspections on January 5, 2000. Although there were no witnesses to the accident, it appears that Coffman did not disconnect the power before removing the leads from the welding machine. He was electrocuted and died shortly thereafter.

{¶ 6} A death claim was filed by Gina Coffman on behalf of Lauren Coffman, Brian's daughter. After the death claim was allowed, Gina filed an application for additional compensation, alleging that Lincoln had violated several specific safety requirements, including former Ohio Adm.Code 4121:1–5–23(A):

{¶ 7} "Unless the electrical conductors or equipment to be worked on are isolated from all possible sources of voltage or are effectively grounded, the employer shall provide protective equipment approved for the voltage involved * * *." 1985–1986 Ohio Monthly Record 66.

{¶ 8} Coffman was not using protective equipment at the time of his accident, because Lincoln never provided any. Instead, Lincoln asserted that it satisfied the requirement by providing a means of disconnecting the power source before the leads were removed or attached. Coffman's death, according to Lincoln, was

therefore due to his own unilateral negligence in failing to shut down the power before removing the leads, contrary to training and instruction.

{¶ 9} The commission agreed and denied the application. In a mandamus action challenging that decision, the court of appeals held that the commission had abused its discretion. The court rejected Lincoln's contention that there was not one way, but two, to satisfy the specific safety requirement: either by providing protective equipment or by isolating the welding machine from all voltage sources. Looking closely at the specific safety requirement's language, the court wrote:

{¶ 10} "The duty imposed upon an employer by the plain language of former Ohio Adm.Code 4121:1–5–23(A) is the duty to provide protective equipment for use in all instances where the equipment to be worked will not be isolated from all possible sources of voltage. The pertinent language is as follows: '*Unless* the * * * equipment to be worked on [is] isolated from all possible sources of voltage * * * *the employer shall provide protective equipment* approved for the voltage involved * * *.' (Emphasis added.) In other words, should there arise any instance where the equipment to be worked on by the employee will not be isolated from all possible sources of voltage (which is exactly what occurred in this case) then the employer has a duty to provide appropriate protective equipment for the employee's use. The employer avoids liability not by isolating the equipment from all sources of voltage, but by providing protective equipment." 2005-Ohio-1519, 2005 WL 736638, at ¶ 11.

{¶ 11} Having determined that Lincoln had not satisfied the specific safety requirement, the court concluded that the doctrine of unilateral negligence did not apply. It granted the writ, and ordered the commission to vacate its order, reconsider the claim, and issue a new order.

{¶ 12} This cause is before this court on an appeal as of right.

{¶ 13} A worker's unilateral negligence will bar a VSSR award only if the employer first complied with the applicable specific safety requirement and its compliance was then nullified by the employee's conduct. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482. If the employer did not initially comply, the employee's conduct is inconsequential. Lincoln's compliance with former Ohio Adm.Code 4121:1–5–23(A) is accordingly the pivotal question at bar.

{¶ 14} Again, "[u]nless the electrical conductors or equipment to be worked on are isolated from all possible sources of voltage * * *, the employer shall provide protective equipment approved for the voltage involved * * *." The only *duty* specified after the words "the employer shall" is the duty to "provide protective equipment approved for the voltage involved." Lincoln's position alters that provision to read "provide protective equipment approved for the voltage involved

or isolate the equipment from all possible sources of voltage." Regardless of whether this alteration is deemed an addition of language to the rule or simply a rearrangement of existing language, we find that it unacceptably compromises the clarity of former Ohio Adm.Code 4121:1–5–23(A).

{¶ 15} Specific safety requirements must contain "specific and definite requirements or standards of conduct * * * which are of a character plainly to apprise an employer of his legal obligations towards his employees." *State ex rel. Holdosh v. Indus. Comm.* (1948), 149 Ohio St. 179, 36 O.O. 516, 78 N.E.2d 165, syllabus. Lincoln's proposed interpretation of former 4121:1–5–23(A) does not do that. The plain language of the rule does. Instructing the employee to turn power off before handling conductors connected to a power supply does not render the conductors "isolated from all possible sources of voltage."

{¶ 16} We find, therefore, that there is only one way to comply with former Ohio Adm.Code 4121:1–5–23(A) and that Lincoln did not meet that requirement.

{¶ 17} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Ward, Kaps, Bainbridge, Maurer & Melvin and Thomas L. Steele, for appellee Gina Coffman.

Duvin, Cahn & Hutton, Kenneth B. Stark, and Patricia S. Conti, for appellant.

Jim Petro, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for appellee Industrial Commission.