[Cite as *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 122 Ohio St.3d 428, 2009-Ohio-3502.]

THE STATE EX REL. INTERNATIONAL TRUCK & ENGINE CORPORATION, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 122 Ohio St.3d 428, 2009-Ohio-3502.]

*Workers' compensation — Specific safety requirement — Ohio Adm.Code 4123:1-5-14(G)(1) — Load-carrying equipment — Employer's failure to provide proper bolt/nut assembly when repairing overhead hoist system, resulting in injury, violated rule requiring repair of defective load-carrying equipment.*

(No. 2008-1341 — Submitted May 19, 2009 — Decided July 23, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 07AP-547, 2008-Ohio-2953.

_____

**Per Curiam**.

{¶ 1} Appellee Edward C. Moritz has alleged that he was injured as a result of a violation of a specific safety requirement ("VSSR") by appellant International Truck & Engine Corporation ("ITE"). Moritz prevailed administratively and at the court of appeals, and ITE has appealed.

{¶ 2} On January 10, 2004, Moritz was using an overhead transport system to move a transmission from one area of the plant to another. Moritz had hooked a hoist to the transmission and was walking it to an assembly area when part of the system broke loose from the overhead trolley rails. It is unclear whether Moritz was struck by the swinging transmission or by one of the system's cross-members, but he was injured as a result.

{¶ 3} Investigation revealed that before the mishap, the hoist had been sticking when manually pulled and ITE had attempted to correct that problem by

replacing the Teflon rollers. In the process, however, the wrong nut was used to reattach the assembly. This eventually caused the accompanying bolt — and with it the assembly's cross-member — to dislodge, causing the accident.

{¶ 4} After his workers' compensation claim was allowed, Moritz filed a VSSR application. He alleged a violation of Ohio Adm.Code 4123:1-5-14(G)(1), which requires that "defective * * * load-carrying equipment shall be repaired or replaced."

{¶ 5} Appellee Industrial Commission of Ohio, through its staff hearing officer, found a violation of that section:

{¶ 6} "[T]he injured worker has presented sufficient evidence that the employer failed to correctly repair load carrying equipment. The employer replaced defective rollers which were attached to the overhead rail trolley which is connected to the hoist equipment, but the employer failed to correctly install the correct bolt which holds the system in place. The failure of the employer to properly repair the overhead trolley caused the bolt to dislodge which caused the hoist to swing out and strike the injured worker. The Staff Hearing Officer finds this failure to properly repair the overhead trolley system was the proximate cause of the accident."

{¶ 7} Rehearing was denied.

{¶ 8} ITE filed a complaint in mandamus in the Court of Appeals for Franklin County to compel the commission to vacate its order. ITE argued that it should not be assessed an additional amount for a VSSR for the inadvertent use of one improper nut/bolt unit in replacing the defective roller. The court of appeals disagreed, holding that "[a]lthough [ITE] replaced the defective equipment, it did so improperly and only created a new defect that caused the injury." *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, Franklin App. No. 07AP-547, 2008-Ohio-2953, ¶ 3.

{¶ 9} ITE now appeals as of right to this court.

**{¶ 10}** The interpretation of a specific safety requirement lies exclusively with the commission. *State ex rel. Allied Wheel Prods., Inc. v. Indus. Comm.* (1956), 166 Ohio St. 47, 50, 1 O.O.2d 190, 139 N.E.2d 41. The provision at issue, Ohio Adm.Code 4123:1-5-14(G)(1), states that "[d]efective * * * load-carrying equipment shall be repaired or replaced." A single issue is now presented: Did the commission abuse its discretion in concluding that ITE's corrective actions did not constitute a "repair," for purposes of Ohio Adm.Code 4123:1-5-14(G)(1), when those actions created another defect that resulted in injury?

**{¶ 11}** In urging an affirmative response, ITE contends that the strict construction required for a specific safety requirement mandates a finding that it satisfied Ohio Adm.Code 4123:1-5-14(G)(1). ITE misinterprets this tenet. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216, declared that because an award for a VSSR was a penalty against the employer, specific safety requirements "must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its *applicability* to the employer." (Emphasis added.) ITE does not deny that Ohio Adm.Code 4123:1-5-14(G)(1) applies to the load-carrying equipment at issue. It denies instead that it violated the regulation, which is a factual, not an interpretative question. ITE's position ignores our decision in *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.,* 98 Ohio St.3d 134, 2002-Ohio-7089, 781 N.E.2d 170*,* which explained that the rule of strict construction is one of "statutory, not evidentiary, interpretation, devised only as a guide to interpreting the specific requirements of a safety standard in VSSR claims." Id. at ¶ 70. It "permits neither the commission nor a reviewing court to construe the *evidence* of a VSSR strictly in the employer's favor." (Emphasis sic.) Id. Consequently, the rule does not apply in resolving factual disputes. Id.

{¶ 12} ITE next challenges the commission's characterization of the relevant defect and ITE's response to it. ITE argues that if the defect was the sticking roller, it was promptly fixed without further problem with or to the roller. If, on the other hand, the defect was the incorrect nut/bolt assembly, that, too, was replaced as soon as ITE learned of it. According to ITE, this negates any possibility of a VSSR.

{¶ 13} ITE's position assumes the existence of a single defect – either the roller *or* the nut/bolt assembly. The commission, however, found two defects – the roller *and* the nut/bolt assembly. ITE created the second, independent defect when it attempted to correct the first. In defending this conclusion, the commission states that the transport system must be viewed as a whole – i.e., as "load-carrying equipment" – and not as its component parts. ITE's repair of a component part is irrelevant, the commission claims, if the load-carrying unit as a whole – the focus of the specific safety requirement – was still unsafe. We agree.

{¶ 14} ITE proposes that insertion of the wrong nut/bolt unit into the roller assembly was a negligent, not a deliberate, act, and that under *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, 874 N.E.2d 1162, it cannot be penalized for noncompliance arising from mere negligence. *Gross*, however, is a temporary total disability case, not a VSSR case, and does not apply.

{¶ 15} In its final argument, ITE suggests that it made a good-faith effort to comply with the specific safety requirement and therefore no VSSR liability should attach. Prior decisions do not support this proposition.

{¶ 16} In *State ex rel. Supreme Bumpers*, 98 Ohio St.3d 134, 2002-Ohio-7089, 781 N.E.2d 170, the employer tried to satisfy a specific safety requirement for minimizing air contaminants by installing exhaust hoods and applying liquid glue to the polishing wheels in its plating facility. Testimony established that

despite these measures, nickel and chrome dust saturated the workplace. The dust caused a carcinoma that eventually killed an employee.

{¶ 17} The commission found a VSSR despite the employer's measures. It found that although the employer's measures were enumerated in the Ohio Administrative Code as acceptable methods for reducing airborne particulates, they were not effective under the circumstances. We upheld that decision.

{¶ 18} A similar result was reached by the Tenth District Court of Appeals in *State ex rel. Moore v. Indus. Comm.* (1985), 29 Ohio App.3d 239, 29 OBR 301, 504 N.E.2d 1125. The relevant specific safety requirement listed many work activities, including chipping of various materials, for which eye protection was required that "effectively protect[ed] against the hazard involved." See former Ohio Adm.Code 4121:1-5-17(C)(1) and (D)(2)(a), now found in 4123:1-5-17(C)(1) and (D)(2)(a). It also required the employer to supply that protection to all employees working in proximity to the hazardous activity. See former Ohio Adm.Code 4121:1-5-17(D)(1), now found in 4123:1-5-17(D)(1).

{¶ 19} Moore was working beside an employee who was chipping metal with a wood chisel. Moore had been given, and was wearing, protective glasses. The glasses, however, had no side shields and thus offered only limited protection. When his neighbor's chisel splintered, metal fragments flew sideways into Moore's eye, and he lost the eye as a result.

{¶ 20} The commission denied Moore's application for a VSSR award. Moore filed a petition for a writ of mandamus in the court of common pleas, which granted the writ. The court concluded that even though the employer had provided safety glasses, they did not effectively protect Moore against the hazard to which he was exposed due to the lack of side shields. The court of appeals affirmed.

{¶ 21} In most of the VSSR cases that have come before us, the employer has made some effort to satisfy the applicable safety regulation. The cited cases,

however, demonstrate that such attempts do not immunize an employer from a VSSR award when the efforts are inadequate and someone is injured. See also *State ex rel. Coffman v. Indus. Comm.,* 109 Ohio St.3d 298, 2006-Ohio-2421, 847 N.E.2d 427 (employer's elaborate system of alerting employees that high-voltage equipment had not been deactivated did not excuse the absence of personal protective gear required by specific safety requirement); *State ex rel. Danstar Builders, Inc. v. Indus. Comm.*, 108 Ohio St.3d 315, 2006-Ohio-1060, 843 N.E.2d 761 (providing roofers with wood for slide guards that were never assembled did not satisfy the specific safety requirement, which required a catch platform, not slide guards); *State ex rel. Toledo Neighborhood Hous. Servs., Inc. v. Indus. Comm.* (2001), 92 Ohio St.3d 229, 749 N.E.2d 739 (employer did not "provide" safety belts, lifelines, and lanyards when it took these items to the job site but did not disclose their location).

{¶ 22} The commission has been delegated the task of interpreting specific safety requirements. In this case, it concluded that ITE's corrective actions did not constitute the "repair" contemplated by Ohio Adm.Code 4123:1-5-14(G)(1) when those actions were improperly performed and resulted in injury. This is not an abuse of discretion.

{¶ 23} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Vorys, Sater, Seymour & Pease, L.L.P., and Robert E. Tait, for appellant.

Richard Cordray, Attorney General, Sheryl Creed Maxfield, First Assistant Attorney General, and John R. Smart, Assistant Attorney General, for appellee Industrial Commission of Ohio.

_____