**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, Slip Opinion No. 2015-Ohio-4798.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4798

THE STATE EX REL. PRECISION STEEL SERVICES, INC., APPELLANT, *v.*

INDUSTRIAL COMMISSION OF OHIO, ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, Slip Opinion No. 2015-Ohio-4798.]**

*Mandamus—Workers' compensation—Violation of a specific safety requirement—*
*Neither Ohio Adm.Code 4123:1-5-14(G)(1) nor 4123:1-5-15(B) sets forth*
*a specific safety requirement regarding a safety latch on a hook attached to*
*a crane—Judgment reversed—Writ granted.*

(No. 2013-1628—Submitted June 23, 2015—Decided November 24, 2015.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-1083,

2013-Ohio-4381.

_____

**Per Curiam.**

**{¶ 1}** This is an appeal of a mandamus case challenging an award to a workers' compensation claimant of additional compensation for the violation of a

specific safety requirement ("VSSR"). Appellant, Precision Steel Services, Inc., alleged that appellee Industrial Commission abused its discretion when it determined that Precision Steel violated the safety regulations in Ohio Adm.Code 4123:1-5-14(G)(1) by failing to repair or replace a crane hook that was missing a safety latch and those in Ohio Adm.Code 4123:1-5-15(B) by failing to remove the crane from service due to the missing latch, proximately causing injury to appellee Melvin E. Myers in the course and scope of his employment.

{¶ 2} Because neither rule at issue sets forth a specific safety requirement regarding a latch on a hook attached to a crane, the commission's decision that Precision Steel violated the rules was an abuse of discretion. Therefore, we issue a writ of mandamus requiring the commission to vacate its order granting Myers's application for a VSSR award and to enter a new order stating that Precision Steel did not violate Ohio Adm.Code 4123:1-5-14(G)(1) and 4123:1-5-15(B).

**Facts**

{¶ 3} Myers was employed as a burn-table operator and fabricator by Precision Steel. On March 1, 2008, Myers was injured when a magnet holding a 1,200-pound piece of metal fell onto his left hand. Fred M. Freeman, special investigator of the Safety Violations Investigative Unit of the Bureau of Workers' Compensation, investigated the incident. Freeman's report stated that Myers was using a Kone XLD ten-ton double-box-girder top-running crane with an 8,000-pound electric magnet attached by a wire rope to turn over a metal piece that he was welding. The record is not entirely clear as to the exact configuration of the crane or the device, but the parties agree that the wire rope holding the magnet had loops or "eyes" at both ends. The upper eye of the wire rope was attached to the crane, while a smaller eye at the bottom of the wire rope was attached to the eye of the magnet with a hook. The hook holding the magnet did not have a latch or clip closing it. As Myers was maneuvering the metal piece, the eye of the magnet

slipped off the hook on the bottom of the wire rope and both the magnet and the piece of metal fell onto his hand.

{¶ 4} Myers's workers' compensation claim was allowed for numerous injuries, including amputation of his left hand. He received compensation for his medical expenses and lost wages.

{¶ 5} Approximately two years after the accident, Myers applied for an additional award for VSSR. He alleged that Precision Steel had violated Ohio Adm.Code 4123:1-5-14(G)(1) and 4123:1-5-15(B) and (D) and that those violations had caused his injury.[1]

{¶ 6} Ohio Adm.Code 4123:1-5-14 applies to various types of power-driven cranes. Subsection (G) states,

> Specific requirements that apply to all paragraphs of this rule.
> (1) Defective safety devices or load-carrying equipment. Defective crane safety devices or load-carrying equipment shall be repaired or replaced**.**

The provisions of Ohio Adm.Code 4123:1-5-15 apply to hoisting and haulage equipment, including slings, lines, and ropes. Subsection (B) states, "Equipment shall be removed from service when there is evidence of a defect, damage, or distortion which may weaken such equipment."

{¶ 7} A staff hearing officer determined that Ohio Adm.Code 4123:1-5-14(G)(1) applied because Myers was operating a power-driven crane. The hearing officer stated that "the evidence shows that the crane causing [Myers's] injury had a defective safety device. The defect was that the safety latch was not present on

---

[1] Prior to the hearing, Myers dismissed his claim based on Ohio Adm.Code 4123:1-5-15(D), and it is not part of this appeal.

the crane hook" and that "the equipment should have been repaired or replaced according to [Ohio Adm.Code] 4123:1-5-14(G)(1)."

{¶ 8} The hearing officer further determined that "the lack of a safety latch amounted to a defect which weakened the equipment (the magnet came off because a safety latch was missing)" and that Precision Steel should have removed the crane from service under Ohio Adm.Code 4123:1-5-15(B). The hearing officer concluded that Precision Steel failed to comply with both regulations and that the failure proximately caused Myers's injury. The hearing officer granted a VSSR award to Myers.

{¶ 9} Precision Steel filed this mandamus action in the court of appeals, alleging that the commission's order was an abuse of discretion. The matter was referred to a magistrate, who determined that the "safety devices or load-carrying equipment" in Ohio Adm.Code 4123:1-5-14(G)(1) referred to the crane equipment identified in Ohio Adm.Code 4123:1-5-14(C) through (F) and that those sections did not mention a hook safety latch. According to the magistrate, Precision Steel could not have violated the rule because the rule provided no notice to repair or replace a defective hook safety latch on a crane.

{¶ 10} Next, the magistrate determined that the commission failed to address the significance of the definition of "equipment" in Ohio Adm.Code 4123:1-5-15(A) when considering whether the hook or safety latch can be viewed as equipment for purposes of section (B) of that rule. The magistrate concluded that the commission abused its discretion and that a writ of mandamus should be issued.

{¶ 11} All parties filed objections. The court of appeals issued a limited writ, but for reasons other than those stated by the magistrate. The court concluded that it was unreasonable to describe the latch as a safety device if it was a component of the crane. But the court stated that it was within the commission's

discretion to determine that the bottom hook was a component of a type of crane covered by Ohio Adm.Code 4123:1-5-14 and, as such, that rule applied to the facts.

**{¶ 12}** The court reasoned that the bottom hook could be "load-carrying equipment" for purposes of Ohio Adm.Code 4123:1-5-14(G)(1). The court ordered the commission to consider whether the crane, when configured with a bottom hook, was load-carrying equipment that was defective for lack of a safety device.

**{¶ 13}** The appellate court did not disturb the commission's finding that Precision Steel had violated Ohio Adm.Code 4123:1-5-15(B). The court issued a limited writ that ordered the commission to readjudicate Myers's claim based on Ohio Adm.Code 4123:1-5-14(G)(1).

**{¶ 14}** This matter is before the court on Precision Steel's appeal as of right.

**Legal Analysis**

**{¶ 15}** An award for a VSSR is "a new, separate, and distinct award" over and above standard workers' compensation benefits. It is not covered by an employer's workers' compensation premium. *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 272, 673 N.E.2d 1301 (1997). To be entitled to an additional award for a VSSR, a claimant must show that (1) a specific safety requirement applied, (2) the employer violated that requirement, and (3) the employer's violation caused the injury. *State ex rel. Supreme Bumpers Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, 781 N.E.2d 170, ¶ 46.

**{¶ 16}** Precision Steel asserts that it could not have violated Ohio Adm.Code 4123:1-5-14(G)(1) and 4123:1-5-15(B) because neither rule specifically requires a latch to be attached to a crane hook. Therefore, Precision Steel maintains, the commission abused its discretion when it determined that Precision Steel violated the rules for failure to provide a latch on a crane hook. We agree.

**{¶ 17}** A "specific requirement" is more than a general course of conduct or general duty or obligation flowing from the employer-employee relationship; rather, it "embraces such lawful, specific and definite requirements or standards of

conduct * * * [that] are of a character plainly to apprise an employer of his legal obligation toward his employees." *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 291 N.E.2d 748 (1972), paragraph one of the syllabus. Specific safety requirements must " 'forewarn the employer and establish a standard which [the employer] may follow.' " (Brackets sic.) *State ex rel. G & S Metal Prods., Inc. v. Moore*, 79 Ohio St.3d 471, 476, 683 N.E.2d 1135 (1997), quoting *State ex rel. Howard Eng. & Mfg. Co. v. Indus. Comm.*, 148 Ohio St. 165, 75 N.E.2d 201 (1947), paragraph one of the syllabus. Neither Ohio Adm.Code 4123:1-5-14(G) nor Ohio Adm.Code 4123:1-5-15(B) establishes a specific safety requirement in the context of this case.

*Ohio Adm.Code 4123:1-5-14 applies to power-driven cranes and hoists*

{¶ 18} Subsections (C) through (F) of Ohio Adm.Code 4123:1-5-14 define overhead electric traveling cranes, electric jib cranes, electric single-rail cranes and hoists, and electric gantry cranes and set forth specific safety requirements with respect to each type. Precision Steel is alleged to have violated subsection (G), which states, "Defective crane safety devices or load-carrying equipment shall be repaired or replaced." The terms "safety devices" and "load-carrying equipment" are not defined in the rule. Undefined words and phrases in administrative rules must be construed within the context in which they are written. *State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 18.

{¶ 19} Nothing in subsections (C) through (F) of Ohio Adm.Code 4123:1-5-14 refers to a hook on a crane or hoist. There is no language in the rule that plainly apprised Precision Steel that a latch on a crane hook constituted either a "safety device" or "load-carrying equipment" for purposes of Ohio Adm.Code 4123:1-5-14(G)(1). As such, there could be no VSSR for failure to provide a latch on the crane hook.

*Ohio Adm.Code 4123:1-5-15(B) applies to hoisting and haulage equipment*

{¶ 20} The court of appeals agreed with the commission that Precision Steel violated Ohio Adm.Code 4123:1-5-15(B), which states, "Equipment shall be removed from service when there is evidence of a defect, damage, or distortion which may weaken such equipment." However, "equipment" is not defined in Ohio Adm.Code 4123:1-5-15(B). There is no specific reference in the rule to a hook as part of hoisting or haulage equipment. The rule does not plainly apprise Precision Steel that a latch on a crane hook constituted "equipment" within the meaning of Ohio Adm.Code 4123:1-5-15(B), and Precision Steel could not have violated the rule for failure to remove the crane from service.

{¶ 21} The interpretation of a specific safety requirement is within the final jurisdiction of the commission and may be corrected in mandamus only upon a showing that the commission abused its discretion. *State ex rel. Roberts v. Indus. Comm.*, 10 Ohio St.3d 1, 4, 460 N.E.2d 251 (1984). This court is "normally obligated to defer to the commission's interpretation of its own rules, [but] we will not defer when the commission's interpretation implicitly adds language to the text of the rule." *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 79-80, 661 N.E.2d 724 (1996). Furthermore, because a VSSR award is a penalty imposed on an employer, specific safety requirements must be strictly construed and all reasonable doubts concerning the interpretation of a particular safety regulation must be resolved in favor of the employer. *Id.* at 78; *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989).

{¶ 22} Here, neither rule included language placing an employer on notice of a legal obligation to (1) put a latch on a hoist hook, (2) replace a latch on a hook if one is missing, or (3) remove the crane from service because a latch was not on a hook. Nevertheless, the commission construed the generic terms "device" and "equipment" to include a latch on a hook. This constituted an abuse of discretion.

{¶ 23} In light of our resolution of this matter, Precision Steel's assertion that the commission's assessment of a 50 percent VSSR penalty violated its right to due process is moot.

{¶ 24} Precision Steel requested oral argument in this matter. Oral argument in an appeal as of right is subject to the court's discretion. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we consider "whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals." *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15, citing *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Ohio Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 25-26. These issues are not present in this matter, and we deny Precision Steel's request.

{¶ 25} In conclusion, we reverse the judgment of the court of appeals and grant a writ of mandamus requiring the commission to vacate its order and to issue a new order denying Myers's application for an additional award for VSSR.

Judgment reversed

and writ granted.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

LANZINGER, J., not participating.

_____

**O'NEILL, J., dissenting.**

{¶ 26} Appellee Melvin E. Myers was using a ten-ton double-box-girder top-running crane with an 8,000-pound electric magnet to turn over a 1,200-pound piece of metal that he was welding. The hook holding the magnet and the piece of metal did not have a latch closing it, although the manufacturer clearly indicated that the safety latch was a critical part of the equipment that must be used to safely

operate the crane and magnet.  As Meyers was working, both the magnet and the piece of metal slipped off the hook and crushed his hand.  Meyers filed for workers' compensation benefits, which were granted, and he also filed a claim for additional compensation due to the violation of a specific safety requirement ("VSSR"), which was contested by the employer, appellant, Precision Steel Services, Inc.  At the VSSR hearing, the Industrial Commission heard testimony from Meyers's supervisor that the manufacturer's recommendations indicated that a hook with a safety latch should always be used when operating the crane with the magnet.  The supervisor also testified that a crane at Precision Steel that did not have a latch would be taken out of service until the latch was replaced.  Obviously, this one was not.  Incredibly, the majority concludes that the Industrial Commission abused its discretion when it defined the terms "device" and "equipment" in two Ohio Administrative Code sections to include the safety latch on the crane hook.

{¶ 27} The majority mistakes this court's role here.  The starting point in any VSSR case is the Ohio Constitution.  The Ohio Constitution states that the decisions of the Industrial Commission in VSSR cases are final.  Article II, Section 35, Ohio Constitution (the commission "shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees"); *see also State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989), citing *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193, 448 N.E.2d 134 (1983) (the interpretation of a specific safety requirement is within the final jurisdiction of the commission).  It is not the Supreme Court's role to interpret rules for the commission in VSSR cases. *See State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 122 Ohio St.3d 428, 2009-Ohio-3502, 912 N.E.2d 85, ¶ 10, 22 ("The interpretation of a specific safety requirement lies exclusively with the commission").  It is not our role to advance alternate theories that support one outcome or another.  Rather, it is our

role to determine whether the decision made by the Industrial Commission is supported by the evidence in the record.

{¶ 28} In VSSR cases, this court has explained that when the record contains some evidence to support the commission's findings, the findings will not be disturbed. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202, 204, 522 N.E.2d 548 (1988). That is the end of the inquiry. If there is some evidence in the record to support the commission's determination that a VSSR occurred, this court is without authority to disturb that determination. *See id*. Thus, it is only if the record is devoid of some evidence to support the commission's interpretation of its own rules that this court is authorized to issue a writ of mandamus correcting the commission's determination. That is not the case here.

{¶ 29} Here, the commission determined that Precision Steel violated two separate safety regulations. Ohio Adm.Code 4123:1-5-15(B), regarding hoisting and haulage equipment, provides that "[e]quipment shall be removed from service when there is evidence of a defect, damage, or distortion which may weaken such equipment." The commission determined that the absence of the safety latch on the hook amounted to a defect that weakened the equipment. The majority calls this an abuse of discretion because there is no specific reference in the rule to a hook latch as part of the hoisting or haulage equipment.

{¶ 30} However, the record includes testimony from Precision Steel's operations manager that a safety latch was a necessary feature for use of the crane hook and that the latch should always be used when the magnet is connected. It is an exercise in semantics to assert that a safety latch that is required by the manufacturer's instructions is not equipment. Similarly, it is unreasonable to expect that the rule must delineate each and every specific part or piece of a ten-ton overhead power crane that may qualify as equipment. The commission did not add language to the rule, as the majority implies; it simply determined that hoisting and hauling equipment for the ten-ton crane included the safety latch on the crane's

10

hook. The majority's analysis in this case does not answer the critical question before us: If a safety latch that would have averted this horrible accident is not equipment, what *would* be considered equipment? And more important for future cases, Who gets to decide what is considered equipment? I suggest that the right answer is the Industrial Commission of Ohio.

**{¶ 31}** The second rule at issue in this case is Ohio Adm.Code 4123:1-5-14(G)(1). This rule requires that "[d]efective crane safety devices or load-carrying equipment shall be repaired or replaced." The commission determined that the absence of the latch on the hook warranted a finding that the crane had a defective safety device pursuant to Ohio Adm.Code 4123:1-5-14(G)(1). As the Tenth District correctly observed, "failure to use a safety device does not mean that the unused safety device itself is defective." 10th Dist. Franklin No. 11AP1083, 2013-Ohio-4381, ¶ 34. However, as the court of appeals also observed, Ohio Adm.Code 4123:1-5-14(G)(1) states that defective "load-carrying equipment" shall be repaired or replaced, and it is possible that the hook without its safety latch constituted defective load-carrying equipment.

**{¶ 32}** I would affirm the Tenth District's decision in this case in every respect. The commission's interpretation of its rules must be upheld when it is supported by some evidence in the record. *State ex rel. Fiber-Lite*, 36 Ohio St.3d at 204, 522 N.E.2d 548. Thus, the finding that Precision Steel violated Ohio Adm.Code 4123:1-5-15(B) should be affirmed. And this case should be remanded to the commission for it to determine whether the use of the hook without the safety latch constituted a failure to repair or replace defective load-carrying equipment in violation of Ohio Adm.Code 4123:1-5-14(G)(1).

**{¶ 33}** The majority's decision in this case ignores the Ohio Constitution and this court's own case law. This court's choosing the winner in this case unlawfully usurps the authority of the commission. The cost of that usurpation is

workplace safety. The Tenth District properly resolved this case, and its decision should be affirmed. I dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Willacy, LoPresti & Marcovy, Salvatore J. LoPresti, Timothy A. Marcovy, and Michael S. Lewis, for appellant.

Michael DeWine, Attorney General, and John R. Smart, Assistant Attorney General, for appellee Industrial Commission.

Vanderhorst & Burgy, L.L.C., and Michael A. Vanderhorst, for appellee Melvin E. Myers.

_____